[Civ. No. 23944.   First Dist., Div. Three.   Nov. 4, 1968.]

REPUBLIC INDEMNITY COMPANY OF AMERICA, Plaintiff and Respondent, v. EMPLOYERS LIABILITY ASSURANCE CORPORATION, LTD., Defendant and Appellant.

Richard A. Boyd, John E. Whiting and Cyril Viadro for Defendant and Appellant.

Cesari & Werner and James L. Werner for Plaintiff and Respondent.

BROWN (H.C.), J.—This action for declaratory relief was instituted to determine the primary liability as between the

Republic Indemnity Company of America (Republic), which had issued a garage owner's liability policy to George Lech, owner of an automobile repair shop, and the Employers Liability Assurance Corporation, Ltd. (Employers), which had issued a liability insurance policy to Joseph Torrente, driver of Lech's automobile.

The case was submitted to the trial court on an agreed statement of facts which may be summarized as follows: Torrente's automobile was being repaired in Lech's automobile repair shop. Lech loaned Torrente his own automobile to use during the time the repairs were being made, and on May 12, 1963, Torrente was involved in a collision causing damage to Thomas Manjoras. The litigation commenced by Manjoras against both Torrente and Lech was settled for $5,500. This sum was paid by Republic which had issued the garage owner's liability policy to Lech.

Republic claimed that its policy of garage owner's liability insurance specifically excluded coverage when Lech's automobile was on loan to a customer of the garage. The trial court agreed with Republic's contention and Employers appeals.

The garage policy issued by Republic to Lech contained the following endorsement: *"It is agreed that such insurance as is afforded by this policy does not apply to any automobile used by the insured for the purpose of loaning to customers."* (Italics added.)

Employers contends that this endorsement to the policy of garage insurance is not effective because it is opposed to public policy. Appellant argues that *Wildman* v. *Government Emp. Ins. Co.,* 48 Cal.2d 31 [307 P.2d 359] and subsequent cases supports its view. In *Wildman* the court held: "We are of the opinion that for an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, *other than the insured,* is driving with the permission and consent of the insured is a violation of the public policy of this state as set forth in sections 402 [now §§ 17150-17157] and 415 [now § 16451] of the Vehicle Code." (Italics added.) (P. 39.)

The rule stated in *Wildman* has been consistently affirmed. In *Bohrn* v. *State Farm etc. Ins. Co.,* 226 Cal.App.2d 497, 503 [38 Cal.Rptr. 77], the court summarized the cases subsequent to *Wildman* as follows: "The holding in *Wildman* was, of course, binding upon subsequent decisions in trial and appellate courts (*Estate of Maguire,* 14 Cal.App.2d 388, 390 [50 P.2d 209]; *Auto Equity Sales, Inc.* v. *Superior Court,* 57

Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]), and was followed consistently in the following decisions by the appellate court: *Cassin* v. *Financial Indem. Co., supra,* 160 Cal.App.2d 631 [325 P.2d 228]; *Bonfils* v. *Pacific Auto. Ins. Co., supra,* 165 Cal.App.2d 152 [331 P.2d 766]; *McFarland* v. *New Zealand Ins. Co., supra,* 176 Cal.App.2d 422 [1 Cal.Rptr. 482]; *Royal Exchange Assur.* v. *Universal Underwriters Ins. Co., supra,* 188 Cal.App.2d 662 [10 Cal.Rptr. 686]; *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.,* 201 Cal.App.2d 9 [20 Cal.Rptr. 73]. The rule of public policy therein expressed has been repeated and reaffirmed by the Supreme Court itself [citations].''

The court in *Bohrn* specifically refers to a number of cases decided subsequent to *Wildman* in which certain types of attempted exclusions had been nullified.

In *Exchange Cas. & Surety Co.* v. *Scott,* 56 Cal.2d 613 [15 Cal.Rptr. 897, 364 P.2d 833], it was contended that Scott, an employee of Quick Way Car Wash, who was driving the automobile, was not included in the coverage because the policy did not insure Sebastian, the owner, for accidents arising out of the operation of an automobile in a repair shop, service station, storage garage, and like areas, by the employees of such enterprise. The court held that the term ''permission'' was deemed to include express or implied permission. The court further stated that the application of the attempted exclusion would be contrary to public policy of this state as expressed in the then section 415 of the Vehicle Code and as interpreted in *Wildman* v. *Government Emp. Ins. Co., supra,* 48 Cal.2d 31. In *American Auto. Ins. Co.* v. *Republic Indem. Co.,* 52 Cal.2d 507 [341 P.2d 675], the policy provided by a special endorsement on insurance issued to an automobile dealer and garage owner that '' 'It is agreed that, with respect to any automobile used with the permission of the named insured *by a customer* of the named insured, such insurance as is provided by the policy applies only to the named insured.' '' (P. 509; Italics added.) The court quoted *Wildman, supra,* and held that the attempted exclusion was contrary to public policy. In *Bonfils* v. *Pacific Auto. Ins. Co.,* 165 Cal.App.2d 152 [331 P.2d 766], the policy excluded other than the named insured. The court held that the exclusion was contrary to public policy. In *Cassin* v. *Financial Indem. Co.,* 160 Cal.App.2d 631 [325 P.2d 228], the policy excluded coverage to drivers over 60 years of age. The court also following

the decision in *Wildman* stated (p. 635) that the policy provision was in conflict with section 415, subdivision (2) of the Vehicle Code which contained no such provision. In *Royal Exchange Assur.* v. *Universal Underwriters Ins. Co.*, 188 Cal. App.2d 662 [10 Cal.Rptr. 686], one Lewis took his Dodge automobile to the garage of J & S Dodge Center for the purpose of having some work done on the car and was given a Plymouth automobile to use while his Dodge was being repaired. He was involved in an accident with the Plymouth. Lewis' policy contained a provision that the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance. The J & S Dodge Center policy had an *endorsement* on its policy which did not expressly include a person, such as Lewis, to whom an auto had been loaned while work was done on his car. The court in declaring the endorsement invalid relied on the "public policy" reasoning of *Wildman, supra.*

Republic contends that the *Wildman* decision had "the effect of invalidating coverage restrictions which were designed to exclude certain *persons* or certain *automobile uses* for whom or for which a named insured was legally responsible" but that here "the Republic endorsement" clearly makes no effort to limit the coverage so as to exclude persons or automobile uses; that the endorsement relates to an automobile, i.e., a loan auto that is totally excluded from the coverage of the policy and cites *Continental Cas. Co.* v. *Hartford Acc. & Indem. Co.*, 213 Cal.App.2d 78 [28 Cal.Rptr. 606], and *Fullerton* v. *Houston Fire & Cas. Ins. Co.*, 234 Cal.App.2d 743, 750 [44 Cal.Rptr. 711]. Neither case cited by respondent is controlling. In *Continental, supra,* the court construed the meaning of the terms "lend automobile" in an exclusion clause of a liability policy in a different factual situation than now before us. In *Fullerton, supra,* the policy specifically covered two ambulances and a Ford truck (p. 748) owned by one Disney and used in his ambulance business. The policy limited the area of operation of the two ambulances and the Ford to a 50-mile radius. Disney was involved in an accident while driving his personally owned Pontiac automobile on a pleasure trip. His Pontiac was not listed as one of the insured vehicles. The court held that the policy covering the two ambulances and truck did not include or cover Disney while driving his personal car on a pleasure ride. The court said: "The basic question really reduces to

this: is an insurance company entitled to select the risks against which it insures, and to restrict its policy to cover only those risks? *The answer is affirmative except in a small number of situations as to which public policy expressly prevents such a contractual arrangement.*" (P. 750; italics added.) The facts in *Fullerton* are not the same as the case before us, and the court's reasoning, therefore, is not applicable here, as the Motor Vehicle Code specifically permits an insurance company to specify the particular vehicles it will insure. (Veh. Code, § 16451, subd. (a).)

The policy before us provides: "Coverage A—Bodily Injury Liability; Coverage B—Property Damage Liability: The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which Part I applies, caused by accident and arising out of the garage operations hazard, including only the automobile hazard for which insurance is afforded as indicated in the declarations; and the company shall have the right and duty to defend any suit against the insured seeking damages payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient. Garage Operations Hazard: The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations'."

Automobile hazards are defined as follows: "1. All Automobiles: (a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes *and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and (b) The ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of (i) the named insured, a partner therein, an executive officer thereof or, if a resident of the same household, the spouse of any of them,* or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use. 2. Automobiles not Owned or Hired: The use in connection with garage operations of any automobile which is neither owned nor hired by the named insured, a partner therein or a member of the same household as any such person." (Italics

added.) The endorsement to the policy limiting automobile hazards covered by the policy provides: "It is agreed that such insurance as is afforded by this policy does not apply to any automobile used by the insured for the purpose of loaning to customers."

The policy specifically provides coverage on "*any automobile owned by . . . the named insured . . . or, . . . resident of the same household, the spouse . . .*" (Italics added.) The endorsement attempted to exclude coverage when Lech (the named insured) loaned his automobile to customers. The Pontiac was owned by Lech and, although the policy insuring it was labeled a garage owner's policy, it provided him with bodily injury and property damage insurance. Whether the policy is termed a garage owner's policy with the additional individual personal injury and property damage coverage for Lech and his family or is interpreted as a personal liability policy with additional coverage for garage owner's hazards is unimportant. The policy insures Lech and the members of his household for injuries and property damage liability as effectively as if it were a policy not containing coverage for other garage operational hazards. It is clear that the endorsement (as construed by *Wildman* v. *Government Emp. Ins. Co., supra,* 48 Cal.2d 31) is in conflict with the express provisions of section 16451 of the Vehicle Code which provides: "An owner's policy of liability insurance shall . . . (b) Insure the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission of said assured, . . ." (See also Veh. Code, §§ 17150-17157.) The endorsement is a restriction against permissive users such as has been continually held to be violative of public policy. (*Wildman* v. *Government Emp. Ins. Co., supra; Bohrn* v. *State Farm etc. Ins. Co., supra.*) The Republic policy insuring Lech, therefore, is the primary insurance and the Employees policy applies to the excess, if any (none here). (See *American Auto. Ins. Co.* v. *Republic Indem. Co., supra.*)

The judgment is reversed and the trial court is directed to enter judgment for Employers in the amount of $1,148.05, the amount stipulated by the parties hereto as its investigation and litigation expenses.

Draper, P. J., and Salsman, J., concurred.