[L.A. No. 29853. In Bank. June 29, 1971.]

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Plaintiff and Appellant, v.
MAX GEWIRTZ, as Administrator, etc., et al., Defendants and Respondents.

## COUNSEL

Ruston & Nance and Donald A. Ruston for Plaintiff and Appellant.

Charles A. Laufer for Defendants and Respondents.

## OPINION

McCOMB, J.—Plaintiff appeals from a declaratory judgment which held the higher of two possible coverage limits in a comprehensive automobile liability insurance policy applicable.

*Facts:* The insured, Pascal Dilday, Inc., an automobile sales and service corporation, sold a used car to Anthony Strong by conditional sales contract. On the day following transfer of the automobile to him, Strong, while driving the automobile on a public highway, collided with another vehicle, killing himself and injuring the occupants of the other car. Pascal Dilday, Inc., failed to notify the Department of Motor Vehicles of the transfer of the automobile and therefore remained its owner within the meaning of the state financial responsibility laws.[1] (Veh. Code, § 5901; see, e.g., *Uber* v. *Ohio Casualty Ins. Co.,* 247 Cal.App.2d 611, 615 [55 Cal.Rptr. 720].) The parties stipulated that Strong was a permissive user of the car and that plaintiff's policy 527197, issued by it to Pascal Dilday, Inc., was in effect at the time of the accident.

The policy is entitled "COMPREHENSIVE LIABILITY POLICY (GENERAL— AUTOMOBILE)" and provides on its face, among other things, for coverage for "Bodily Injury Liability—Automobile" in the sum of $250,000 each person and $500,000 each accident. In addition to showing such coverage and other coverages, the first page of the policy indicates that the business of the named insured is "Automobile Sales and Service" and lists endorsements forming a part of the policy. Included in the endorsements listed are UU3050 and UU3159, which will be hereinafter further discussed.

The second page of the policy is a form entitled "DECLARATIONS— SCHEDULE A," which gives a description of the hazards insured against. That form, which is labeled at the bottom "FORM CGA-100-GARAGE Rev. (3-64)," provides that owned automobiles are covered for "Garage Liability (Premises—Operations—Automobiles) Subject to all the terms

---

[1]At the time of the accident, section 5901 of the Vehicle Code provided that all dealers must give written notice of transfers to the Department of Motor Vehicles not later than the end of the next business day. The statute now provides that notice must be given by the end of the third business day.

and conditions of this policy and Form No. UU3159 attached." With respect to hired automobiles and nonowned automobiles, it is specifically provided, "No coverage for this hazard except as provided by Garage Endorsement UU3159."

In paragraph III of the insuring agreements, "insured" is defined, as follows: "The unqualified word 'insured' includes the named insured and also includes . . . under coverages A ["Bodily Injury Liability—Automobile"] and C ["Property Damage Liability—Automobile"] any person while using an owned automobile . . . provided the actual use of the automobile is by the named insured or *with his permission*. . . ." (Italics added.)

Endorsement UU3050 provides, in part: "When . . . a person or organization not insured under the provisions of this policy and attached forms becomes an Insured in conformity with the Financial Responsibility Laws or other laws of the State in which the accident occurs," the minimum financial responsibility limits in effect at the time the policy was issued ($10,000/$20,000 for bodily injury and $5,000 for property damage) apply.

Endorsement UU3159 is entitled, as follows:

"GARAGE

(Premises—Operations—Automobiles)

LIMITED ADDITIONAL INTERESTS."

The endorsement defines "Garage" to mean "an automobile sales agency, repair shop, service station, storage garage or public parking place" and provides, in part: "It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability-Automobile and for Property Damage Liability-Automobile applies to the hazards defined below, subject to all the terms and conditions of the policy and the following provisions:

A. Hazards Defined:

Garage Operations Hazard: The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations'; including the Automobile Hazard:

(a) the ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use for other business purposes and the use for non-business purposes of any automobile owned

by or in charge of the named insured, and used principally in garage operations;

(b) the ownership, maintenance or use of any automobile owned by the named insured in connection with garage operations while furnished for the use of (1) the named insured, a partner therein, an executive officer thereof, or, if a resident of the same household, the spouse of any of them, or (ii) any other person or organization to whom the named insured furnishes automobiles for their regular use.

. . . . . . . . . . . . . . . . . . .

B. Definition of Insured:

Persons Insured: Insuring Agreement III of the policy does not apply. Each of the following is an insured with respect to the Garage Operations Hazard, except as provided below:

(1) the named insured,

(2) . . . . . . . . . . . . . . . .

(3) With respect to the Automobile Hazard:

(a) any partner, or paid employee or director or stockholder thereof or a member of the household of the named insured or such partner or paid employee, or director or stockholder while using an automobile covered by this policy or when legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and

(b) any other person using or legally responsible for the use of such automobile provided the actual use is with the permission of the named insured . . . ."

Paragraph 3, subdivision (b), then limits coverage with respect to the permissive users referred to therein. It excludes coverage if another policy applies to the user as a named insured or an employee or agent of a named insured, provided such policy complies with the financial responsibility laws. If there is no other such policy, coverage is limited to the minimum requirements of the financial responsibility laws. These limitations are permitted by the Insurance Code when the named insured is engaged in the automobile business.[2]

The endorsement further provides: "None of the following is an insured: . . . (iii) any person or organization other than the named insured with

---

[2]At the time the policy herein was written, such permission was contained in section 11580.1, subdivision (f), of the Insurance Code. (Stats. 1969, ch. 471, p. 1034.)

respect to any automobile . . . possession of which has been transferred to another by the named insured pursuant to an agreement of sale. . . ."

In its complaint, plaintiff asked for a declaration of the court to determine if the policy provided, with respect to Strong's accident, $10,000 per person and $20,000 per accident coverage or $250,000 per person and $500,000 per accident coverage.

The trial court found that by reason of the garage endorsement's exclusionary language hereinabove quoted Strong was expressly excluded from coverage under that endorsement, but that the automobile insurance coverage for bodily injury liability provided for by the policy was applicable to him at the time and place of the accident to the full limits thereof, and is now so applicable to the administrator of his estate. Accordingly, judgment was entered determining that the applicable limits of insurance were $250,000 per person and $500,000 per accident. The trial court apportioned the coverage as per a stipulated settlement in the third party actions brought against Strong's administrator.[3]

Question: *Did the trial court properly hold the upper limits of the policy applicable?*

*Yes.* It is possible to interpret the policy as providing for only the $10,000 per person and $20,000 per accident coverage with respect to Strong's accident.[4] ■ However, as will be shown, there is an apparent ambiguity in the terms of the policy as applied to Strong's accident, and uncertainty or ambiguity must be resolved against the insurer and in favor of the insured. (*Paramount Properties Co.* v. *Transamerica Title Ins. Co.*, 1 Cal.3d 562, 569 (2) [83 Cal.Rptr. 394, 463 P.2d 746]; *Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].)

---

[3]The limits of Pascal Dilday's liability for bodily injury, pursuant to the financial responsibility laws in effect at the time of the accident, were found by the trial court to be in the sum of $10,000 per person and $20,000 per accident, and judgments against Pascal Dilday totaling $20,000 were found to have been satisfied.

[4]If, as has been suggested, the provision in the garage endorsement excluding Strong is treated as void because it is against public policy (see *Wildman* v. *Government Employees' Ins. Co.*, 48 Cal.2d 31 [307 P.2d 359]), and the balance of the garage endorsement is held applicable to Strong, coverage would be limited, under paragraph (3), subdivision (b), of the section defining insured, to the minimum requirements of the financial responsibility laws.

If, as has also been suggested, no automobiles owned by the named insured and used by it in connection with its automobile sales agency are covered except by the garage endorsement, and the provision in the garage endorsement excluded Strong from all coverage under the garage endorsement, he would have been a person not insured under the terms of the policy, and would therefore come within the coverage provided for by endorsement UU3050. As hereinabove indicated, that endorsement provides for coverage in the amount of $10,000 per person and $20,000 per accident.

Thus, the trial court properly determined that the upper limits of the policy were applicable.

The automobile which Strong was driving was owned by the named insured in connection with its automobile sales agency and came within the terms of the garage endorsement; and the definition of "Automobile Hazard" contained in the garage endorsement is broad enough to include Strong as a permissive user thereunder. By the terms of subdivision (b) of paragraph (3) of the section defining insured in the garage endorsement, permissive users such as Strong are included to the extent of the requirements of the financial responsibility laws if they are not covered by other valid and collectible insurance. As hereinabove pointed out, however, by a further provision in the garage endorsement, any person to whom the named insured had transferred possession of an automobile pursuant to a contract of sale was specifically excluded from coverage.

The fact that such provision excluded Strong is clear, but an ambiguity exists as to the extent of the exclusion—that is, it is unclear whether the intent of the specified exclusions was to exclude all persons excluded both from the garage endorsement and from the basic policy or merely from the garage endorsement. The trial court found that the exclusion excluded Strong only from the garage endorsement.

The exclusions are prefaced by "None of the following is an insured. . . ." That provision is preceded by the definition of insured, which, in turn, is preceded by "Each of the following is an insured *with respect to the Garage Operations Hazard,* except as provided below. . . ." (Italics added.) This language strongly suggests that the exclusion which follows is only an exclusion from coverage under the garage endorsement and not an exclusion from the entire policy. The immediately preceding provision, which states that insuring agreement III (defining insured in the basic policy) does not apply, merely shows that insuring agreement III is not to be used to define the insured under the coverage provided by the garage endorsement; it does not amend insuring agreement III.

As hereinabove indicated, the garage endorsement provides that "such insurance afforded by the policy . . . applies to the hazards defined below, subject to all the terms and conditions of the policy and the following provisions. . . ." This provision may well be understood to mean that where insurance is extended by the garage endorsement, its provisions shall prevail over the general provisions extending coverage, but that the provisions of the garage endorsement do not prevail where, as here, the endorsement does not extend coverage.

It will be recalled that schedule A (which constitutes the second page of the policy and is completely separate from the garage endorsement) lists "Garage Liability (Premises—Operations—Automobiles)" as a covered hazard with respect to owned automobiles, subject to the terms and conditions of the policy and the garage endorsement, but, with respect to hired automobiles and nonowned automobiles, declares that there is no coverage for this hazard except as provided in the garage endorsement. The fact that similar language is not used with respect to owned automobiles suggests that there is coverage for owned automobiles with respect to "Garage Liability (Premises—Operations—Automobiles)" aside from that specified in the garage endorsement, and thus creates an ambiguity.

The garage endorsement is also ambiguous with respect to whether it applies to accidents which occur away from the business premises. The endorsement would seem to cover such outside accidents. In the first place, it is made applicable to the "hazards defined below" and seems to define *separately* "Garage Operations Hazard" and "Automobile Hazard." Secondly, "Automobile Hazard" is defined to include "the occasional use [of automobiles owned by the named insured and used principally in garage operations] for . . . business purposes" other than garage operations, the use of such automobiles "for non-business purposes," and even their use by some members of the families of officers of the named insured or by persons to whom the named insured furnishes automobiles for their regular use. Anyone reading the terms of the "Automobile Hazard" provisions would therefore reasonably expect coverage for accidents occurring away from the business premises.

Nevertheless, another reading is plausible. The garage endorsement is entitled, "GARAGE (Premises—Operations—Automobiles)," which would suggest that the form relates only to the operation of automobiles on the business premises. Furthermore, the endorsement first lists as a covered hazard "Garage Operations Hazard: The ownership, maintenance or use *of the premises* for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called 'garage operations'; *including the Automobile Hazard.* . . ." (Italics added.) It further provides, " 'Premises' means premises where the named insured conducts garage operations, and includes the ways immediately adjoining. . . ." The word "including" in the above definition of the "Garage Operations Hazard" might indicate that the premises limitation applies to all users within the "Automobile Hazard" provision. Under such an interpretation, only those accidents which occur on the business premises would be covered by the garage endorsement. (Cf. *Herzog* v. *National American Ins. Co.,* 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841]; *Huggins* v. *Yoshiwara,* 2 Cal.3d 200 [84 Cal.Rptr. 709, 465 P.2d 845].) Thus, another ambiguity appears.

It should also be noted that the garage endorsement is conspicuously entitled "LIMITED ADDITIONAL INTERESTS." This title gives no clue to the fact that while the endorsement adds some hazards, it also reduces or eliminates the coverage of certain persons who would be fully covered under the general policy provisions.

■ Under the circumstances, the trial court's interpretation that, although excluded from coverage under the garage endorsement, Strong was covered under the main body of the policy properly resolved the ambiguity in favor of the insured.

The judgment is affirmed.

Tobriner, J., Mosk, J., and Burke, J., concurred.

**SULLIVAN, J.,** Concurring.—While I subscribe to the result reached and am in basic agreement with the majority I set forth briefly my own views as to the analysis of the problem before us.

*First:* Had the Garage Endorsement (Premises—Operations—Automobiles—UU3159) not been attached thereto, the policy under its basic insuring agreements would have afforded Strong coverage for his accident with maximum limits of $250,000 for each person and $500,000 for each accident. Insuring Agreement III provides that the word "insured" includes "any person while using an owned automobile . . . provided the actual use of the automobile is by the named insured or with his permission. . . ." Since Pascal Dilday owned the automobile and permitted Strong's use of it, Strong is an "insured" under the policy. Insuring Agreement I provides that plaintiff agrees "[t]o pay on behalf of the insured [Strong] all sums which the insured [Strong] shall become legally obligated to pay as damages because of bodily injury . . . sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile." Here, the bodily injuries for which claims were made against Strong were caused by Strong's accident and arose out of his use of the car; hence, all such claims are covered by the basic insuring agreements of the policy.

*Second:* The Garage Endorsement, however, provides that, as applied to the "garage operations hazard" and the "automobile hazard," defined therein, the insurance afforded by the policy is subject to the provisions of the endorsement. The garage operations hazard is defined as "[t]he owner-

ship, maintenance or use of the premises[1] for the purpose of a garage,[2] *and all operations necessary or incidental thereto . . .*" (italics added) *including* operations associated with the automobile hazard. The latter hazard is defined to include "the ownership, maintenance or use of any automobile owned by the named insured in connection with garage operations[3] while furnished for the use of . . . any other person . . . to whom the named insured furnishes automobiles for their regular use." Obviously, Pascal Dilday's ownership of the automobile was in connection with the firm's operations as an automobile sales agency. Furthermore, the accident occurred after Pascal Dilday had furnished the car to Strong for his ordinary use.[4] Therefore, the accident falls squarely within both the garage operations hazard and the automobile hazard as defined by the Garage Endorsement.

*Third:* Although the accident falls within the hazards defined by the Garage Endorsement, Strong does not fall within its provisions defining the persons insured, which provisions supersede Insuring Agreement III of the basic provisions of the policy. The endorsement defines "insured" with respect to the automobile hazard as including "any other person using . . . such automobile provided the actual use is with the permission of the named insured, express or implied. . . ." The endorsement then proceeds to limit coverage with respect to any insured thus defined to the minimum limits allowed under the financial responsibility laws (in this case, $10,000 for each person and $20,000 for each accident). It cannot be questioned that Strong is an insured under the foregoing definition, since he was using the car with permission of the named insured, Pascal Dilday. However, in a later section the endorsement *excepts* from its definition of "insured" "any person . . . other than the named insured with respect to any automobile . . . possession of which has been transferred

---

[1] "'Premises' means premises where the named insured conducts garage operations, and includes the ways immediately adjoining. . . ."

[2] "'Garage' means an automobile sales agency, repair shop, service station, storage garage or public parking place."

[3] "Garage operations" are those operations necessary or incidental to ownership, maintenance or use of the premises for garage purposes.

[4] The term "regular use," which appears in the endorsement, is ambiguous. It could mean continuous, periodic, constant or habitual use—as opposed to only occasional use. However, the more natural manner of expressing that meaning would be: ". . . to whom the named insured *regularly* furnishes automobiles for their use." Thus, it appears more likely that "regular use" means normal use. Here, again, an ambiguity arises since the word "their" may refer either to the automobiles or to the persons to whom the cars are furnished. "Their regular use," therefore, could mean either the use of the cars as a normal reasonable man would use them or their use for the purposes for which the particular user normally employs automobiles. Since Pascal Dilday furnished the car for Strong's use in the way he normally uses cars and in the manner cars are normally used, this latter ambiguity need not be resolved.

to another by the named insured pursuant to an agreement of sale." Since possession of the car which caused the accident had been transferred to Strong pursuant to a contract of sale, it is clear that the language of the endorsement specifically excludes Strong from the class of persons insured under such endorsement.

*Fourth:* In summary, the insurance contract without the Garage Endorsement clearly covers the accident and insures Strong to its limits of $250,000 and $500,000. The accident falls within the defined hazard of the endorsement; but Strong is excluded as a person insured because he took possession under a contract of sale. However, it is not clear what effect Strong's exclusion from coverage under the endorsement was intended to have upon his coverage under the general policy. As discussed in the majority opinion (see *ante,* pp. 251-252), the policy is ambiguous as to whether the exclusion from the endorsement is meant to exclude Strong *only* from coverage under the endorsement or to exclude him from coverage under *both* the general policy *and* the endorsement.

Under settled principles, this ambiguity must be resolved in favor of the insured. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168].) Therefore, I am of the view that Strong is excluded only from coverage under the endorsement; he continues to be covered under the general provisions of the policy.[5] Consequently, I agree with the majority that the appropriate policy limits are $250,000 per person and $500,000 per accident, and that the judgment must be affirmed.

Wright, C. J., and Peters, J., concurred.

---

[5]Since I find that Strong was covered under the basic insuring agreements of the policy, I find it unnecessary to discuss the applicability of the Comprehensive Liability Policy—General Automobile Endorsement (UU 3050). That endorsement applies only where the policy is certified as proof of financial responsibility or where a person not insured under the terms of the policy becomes an insured by operation of a financial responsibility law. Neither condition exists in the present case; hence, the UU 3050 endorsement is inapplicable.