[L.A. No. 29857. In Bank. Sept. 11, 1973.]

RICHARD WILLIAM METZ, a Minor, etc., et al.,
Cross-complainants and Respondents, v.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY,
Cross-defendant and Appellant.

## COUNSEL

Ball, Hunt, Hart, Brown & Baerwitz, Joseph A. Ball and Albert H. Ebright for Cross-defendant and Appellant.

Olney, Levy, Kaplan, Ormes & Tenner, Magana, Olney, Levy & Cathcart and Jack Tenner for Cross-complainants and Respondents.

Peter Burrows as Amicus Curiae.

## OPINION

**TOBRINER, J.**—The accident which generated this litigation occurred when Richard Metz sustained severe injuries in a collision of his motorcycle with an automobile driven by Gomer Hamlin. Hamlin had leased the automobile from National Auto Leasing Corporation (hereafter National). Universal Underwriters Insurance Company (hereafter Universal) insured all cars owned by National. Although Universal here contends that its policy excludes or limits coverage of Hamlin as a permissive user

of such a car; the trial court rendered a declaratory judgment holding Universal liable to Richard and Elmo Metz for the sum of $162,749.38; Universal appeals.

This opinion rejects Universal's contention, and reaches the following conclusions: (1) The exclusion in the policy issued by Universal to National of cars "while rented to others" constituted an attempt to exclude a class of permissive users, and consequently conflicted with Insurance Code section 11580.1, subdivision (d).[1] (2) The provision in the garage endorsement denying coverage to permissive users who have other applicable insurance does not, for two reasons, serve to bar coverage of Hamlin in the case at bar. First, in *Universal Underwriters Ins. Co.* v. *Gewirtz* (1971) 5 Cal.3d 246 [95 Cal.Rptr. 617, 486 P.2d 145], we held that an identical endorsement did not unambiguously exclude coverage of permissive users for accidents such as the instant one, distant from the business premises of the named insured. Second, that endorsement, by denying coverage to a class of permissive users, violated section 11580.1, subdivision (d). (3) The policy's attempt to limit coverage of permissive users to the minimum coverage permitted by Vehicle Code section 16059 violated the requirement of Insurance Code section 11580.1, subdivision (d), that permissive users be insured "to the same extent" as the named insured.

### 1. *Statement of facts.*

Universal issued to National, together with Ogner Bros., Ltd., and Danny McGroo, Inc., as named insureds, a one-year comprehensive liability policy (General-Automobile), with coverage limits of $250,000 per person and $500,000 per accident, with coverage commencing October 1, 1965.[2] Prior thereto, on May 21, 1965, National had leased a new Lincoln Continental to Hamlin for 36 months. Pursuant to the provisions of his lease with National, Hamlin purchased a policy from Allstate Insurance Company (hereafter Allstate) with limits of $10,000/$20,000 and an excess policy

---

[1] As of 1965, when Universal's policy was issued, Insurance Code section 11580.1, subdivision (d), provided that every policy of automobile insurance include a provision "insuring the insured named therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied." In 1970 subdivision (d) of section 11580.1 was repealed, but similar language requiring coverage of permissive users was added to section 11580.1 as subdivision (b)(4).

[2] National also purchased an errors and omissions policy from Universal which provided $10,000/$20,000 coverage in the event that a lessee failed to procure insurance. Since Hamlin purchased liability insurance covering National, the errors and omissions policy is inapplicable to the present controversy.

from Reserve Insurance Company (hereafter Reserve) with limits of $90,000/$280,000; both policies listed Hamlin and National as insureds.

On June 23, 1966, Hamlin, while driving the Lincoln, struck a motorcycle operated by Richard Metz, causing him severe injury. Elmo Metz, individually and as guardian ad litem for his son, sued Hamlin and National, and recovered judgment for $254,593.74, apportioned $10,000 against National (its liability as owner of the vehicle under Veh. Code, §§ 17150 and 17151 as of 1966) and $244,593.74 against Hamlin. The insurers engaged by Hamlin — Allstate and Reserve — paid a total of $100,000, the limits of their policies, in partial satisfaction of the judgment.

In this declaratory relief action initiated by Reserve, the Metzes filed a cross-complaint seeking to recover from Universal $154,593.74, the balance of the judgment after crediting the amounts paid by Allstate and Reserve. Granting the Metzes' motion for summary judgment, the trial court found Universal liable to them for $162,749.38, the unsatisfied balance of the judgment including accrued interest.

Although the Universal policy provides coverage against liability arising from the use of any automobile owned by National, and defines "insured" as including anyone using such a car with National's permission, Universal maintains that its policy excludes coverage for Hamlin's liability to Metz. It first contends that the policy excludes coverage for the Lincoln, because the policy's description of "hazards insured against" states that "It is agreed that there is no automobile liability or medical payments coverage applicable to any vehicle *while rented to others* by the named insured."[3] (Italics added.) A garage endorsement (number UU-3159), and a customer rental endorsement (number UU-3169), attached to the policy, reiterate the exclusion of automobiles "while rented to others."[4]

---

[3]The provision as a whole reads: "It is agreed that there is no automobile liability or medical payments coverage applicable to any vehicle while rented to others by the named insured, or any vehicle used for ambulance, newspaper collection or delivery, transport of explosives, liquified gas, gas, gasoline or oil, long haul truck, haulaway, exhibition, racing, emergency vehicle, or public passenger carrying."

Following this provision appears the typewritten words "Customer Rental." This is apparently intended as a cross-reference to the customer rental endorsement (UU-3169) quoted in footnote 4, *infra.*

[4]The garage endorsement, after defining a garage operation hazard and an automobile hazard, excludes from those covered risks "any automobile . . . while rented to others by the named insured unless to a salesman for use principally in the garage business of the named insured." The customer rental endorsement amends the exclusion in the garage endorsement to bar coverage of "any automobile . . . while rented to others by the named insured unless to a salesman for use principally in the business of the named insured or to a customer of the named insured while such customer's automobile is temporarily left with the named insured for service, repair, or sale. . . ."

Universal secondly argues that under the garage endorsement (UU-3159) coverage for Hamlin is excluded by a provision stating that coverage of permissive users "shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured . . . under a policy with limits of liability at least equal to the requirements of the Financial Responsibility Law."

Universal thirdly contends that if the previously quoted exclusions are invalid as an unlawful restriction upon the coverage of permissive users, then its liability is limited to $10,000 pursuant to endorsement UU 3050, which states that "When . . . a person or organization not insured under the provisions of this policy and attached forms becomes an Insured in conformity with the Financial Responsibility Laws or other laws of the State in which the accident occurs, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance, or use during the policy period of any automobile insured hereunder, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the following limits of liability: Bodily injury liability-automobile . . . $10,000 each person . . . $20,000 each accident."

2. *The policy's exclusion of vehicles "while rented to others" conflicts with the mandatory coverage of permissive users, imposed, as of the policy date, by Insurance Code section 11580.1, subdivision (d).*

In *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359], we held that the required coverage of permissive users "must be made a part of every policy of insurance issued by an insurer since the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles. . . . [F]or an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the insured, is driving with the permission and consent of the insured, is a violation of the public policy of this state. . . ." (48 Cal.2d at p. 39.)

Vehicle Code section 415, the statute at issue in *Wildman*, was reenacted as sections 16450 and 16451 in the 1959 revision of the Vehicle Code. In 1963, the Legislature amended section 16450 to provide that the requirements set forth in that and subsequent Vehicle Code sections "shall apply only to those policies which have been certified as proof of ability to respond in damages as provided in section 16431." To govern non-

certified policies, the Legislature enacted Insurance Code section 11580.1, and in subdivision (d) of that section required that every policy of automobile insurance contain a "[p]rovision insuring the insured named therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied."

The net result of these enactments is that Vehicle Code section 16451 no longer mandates coverage of permissive users in ordinary automobile insurance policies, but only in certified policies (see *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 525 [88 Cal.Rptr. 246]); Insurance Code section 11580.1, however, applied to noncertified policies the same duty of mandatory coverage of permissive users as previously embodied in Vehicle Code section 16451. The 1963 legislation thus carried on the legislative policy of protecting those persons injured by the negligence of permissive users by requiring that all policies, certified or noncertified, include permissive user coverage. (See *Great American Ins. Co.* v. *Globe Indem. Co.* (1970) 8 Cal.App.3d 938, 944-945 [87 Cal.Rptr. 653].)[5]

Although Universal's policy provides coverage for permissive users, it unambiguously excludes automobiles "while rented to others." The issue before us thus must be whether this exclusion conflicts with Insurance Code section 11580.1, subdivision (d).[6] Universal concedes that a provision excluding coverage of renters would be an exclusion of a class of permissive users and hence void. (See *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 150 [23 Cal.Rptr. 592, 373 P.2d 640]; *Financial Indem. Co.* v. *Hertz Corp.* (1964) 226 Cal.App.2d 689, 697 [38 Cal.Rptr. 249].) It maintains, however, that its policy does not exclude a class of users, but a class of automobiles, namely, those rented to persons other than the named insured.

Universal points out that no statute or public policy requires an insurer to cover all vehicles owned by the named insured. (See *Martinez* v. *Allstate*

---

[5]For an excellent review of the evolution of the *Wildman* doctrine and the statutory requirements for certified and noncertified policies, see Melnick, California Automobile Insurance Law Guide (Cont. Ed. Bar 1973) pages 79-94; see also Notes, *California Financial Responsibility Laws—A Judicial Interpretation* (1969) 20 Hastings L.J. 1273.

[6]This exact issue arose also in *Home Indemnity Co.* v. *Mission Ins. Co.* (1967) 251 Cal.App.2d 942 [60 Cal.Rptr. 544]. The court, however, found that the policy which excluded rented vehicles was excess, and since the primary coverage was adequate to meet the claim, its decision did not pass upon the validity of the exclusion.

*Ins. Co.* (1968) 261 Cal.App.2d 754 [68 Cal.Rptr. 278]; *Fullerton* v. *Houston Fire & Cas. Ins. Co.* (1965) 234 Cal.App.2d 743, 750 [44 Cal. Rptr. 711].) It may agree to insure a car used principally by the named insured, while excluding another car rented by the insured to another person. (See *Pacific Indem. Co.* v. *Liberty Mut. Ins. Co.* (1969) 269 Cal. App.2d 793, 796 [75 Cal.Rptr. 559].) The insurer, moreover, may agree to insure a vehicle for ordinary use, but refuse coverage of extraordinary use. (See *Allstate Ins. Co.* v. *Normandie Club* (1963) 221 Cal.App.2d 103 [34 Cal.Rptr. 280] [exclusion of "any automobile while used as a public or livery conveyance."])

The right of the insurer to limit its coverage of automobiles, however, does not go so far as to permit the insurer by adroit wording to evade the statutory requirement for coverage of permissive users. (See *Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 156 [331 P.2d 766].)[7] ██ For example, a policy which excluded automobiles "when operated by a permissive user" would be clearly seen as an exclusion of persons, not vehicles and void under section 11580.1, subdivision (d).[8] Thus in *Clark* v. *Universal Underwriters Ins. Co.* (1965) 233 Cal.App.2d 746 [43 Cal.Rptr. 822] and *Pacific Indem. Co.* v. *Universal etc. Ins. Co.* (1965) 232 Cal.App.2d 541 [43 Cal.Rptr. 26], in which the policy provision offered coverage to permissive users only while the insured automobile "is operated by the named insured," the courts had no difficulty finding the provision an impermissible exclusion of permissive users.

The case most closely resembling the present one is *Republic Indem. Co.* v. *Employers Liab. Assur. Corp.* (1968) 267 Cal.App.2d 121 [72 Cal.Rptr. 718], in which a policy issued to an automobile repair shop provided that " 'such insurance as is afforded by this policy does not apply to any auto-mobile used by the insured for the purpose of loaning to customers.' " The insurer contended that its policy excluded *automobiles,* not permissive *users*—essentially the same argument as that presented by Universal in the present case. The court rejected this contention and held that "[t]he endorsement is a restriction against permissive users such as has been

---

[7] " 'The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith.' " (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39 [307 P.2d 359], quoting *Malmgren* v. *Southwestern Auto. Ins. Co.* (1927) 201 Cal. 29, 33-34 [255 P. 512].)

[8] Cf. *Bohrn* v. *State Farm etc. Ins. Co.* (1964) 226 Cal.App.2d 497 [38 Cal.Rptr. 77], which held invalid a provision that the insurer would not be liable " 'for losses or damage sustained while any automobile insured hereunder is driven or operated by Bill A. Bohrn except when accompanied by the named insured or the named insured's spouse.' "

continually held to be violative of public policy." (267 Cal.App.2d at p. 126.)

The exclusion of automobiles "while rented to others" in the instant case parallels the exclusion of cars "loaned to customers" held invalid in *Republic Indemnity*. In both cases the policies spoke superficially of excluding only a class of automobiles. But in both cases the definitive characteristic of the excluded class of vehicles lies in the fact that they are operated by a class of permissive users; hence, in practical effect the exclusion denies coverage to this class of permissive users.

We have uniformly held that "the *entire* automobile financial responsibility law must be liberally construed to foster its main objective of giving 'monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' " (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962), supra, 58 Cal.2d 142, 153; *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 671 [79 Cal.Rptr. 106, 456 P.2d 674].) ■ Applying this principle of construction, we conclude that section 11580.1, subdivision (d), did not merely proscribe policy provisions which by their terms exclude coverage for permissive users, but also invalidated provisions which, by defining a class of excluded vehicles in terms of their operation by permissive users, serves effectively to deny coverage to those users.[9] ■ We hold that Universal's exclusion of automobiles "while rented to others" conflicts with Insurance Code section 11580.1, subdivision (d), and is therefore ineffective to limit coverage of Hamlin.[10]

3. *The provision in the garage endorsement denying coverage to permissive users who have other insurance applicable to the same loss is ineffective to preclude coverage of Hamlin.*

The garage endorsement (UU-3159) to the Universal policy, in defining persons insured with respect to the automobile hazard, excludes permissive

[9]Cf. *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100 [52 Cal.Rptr. 569, 416 P.2d 801].

[10]Universal contends that its exclusion of automobiles "while rented to others" was authorized by Insurance Code section 11580.1, subdivision (c). As of the date of issuance of the policy, that subdivision provided that no automobile liability policy shall be issued unless it contained a "[p]rovision designating by explicit description the purpose of use of such motor vehicles with respect to which coverage is not intended to be granted."

Subdivision (c) did not authorize any particular exclusion; it simply required that exclusions be explicitly described in the policy. Subdivision (c) did imply that a policy

users with other "valid and collectible insurance."[11] This provision does not bar coverage of Hamlin for two reasons.

　　　　First, the purpose of the garage endorsement is to add insurance protection to cover liability arising from the operation of premises for storing or repairing cars. In light of this purpose, the exclusion in the garage endorsement· of permissive users with other insurance was found by this court, in *Universal Underwriters Ins. Co.* v. *Gewirtz* (1971) 5 Cal.3d 246 [95 Cal.Rptr. 617, 486 P.2d 145], to be ambiguous in two respects. The majority opinion noted "it is unclear whether the intent of the specified exclusions was to exclude all persons excluded both from the garage endorsement and from the basic policy or merely from the garage endorsement." (See 5 Cal.3d at p. 251.) Additionally, the majority found no clear language to show whether the exclusion in the garage endorsement applied to accidents which occur away from the garage premises of the named insured (see 5 Cal.3d at p. 252). In the instant case Hamlin was covered as a permissive user under the basic policy, and the accident here at issue did not occur on the premises of the named insured. Thus, the garage endorsement, as construed in *Universal Underwriters* v. *Gewirtz,* does not clearly and unmistakably preclude coverage in the case at hand (see, e.g., *Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861]) and must be construed to extend insurance protection to Hamlin.

Second, since the provision in· question explicitly excludes a class of permissive users from among the persons insured, it can only be valid if it falls within the express authorization of Insurance Code section 11580.1, subdivision (f). That statute, as of the policy date, provided that "[w]here two or more policies are applicable to the same loss and one of such policies affords coverage to a named insured engaged in *selling,* repairing, servicing, delivering, testing, road testing, parking, or storing automobiles, such policies may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured

---

may lawfully exclude some uses, but nothing in the language of that subdivision suggests that an otherwise unlawful exclusion of permissive users would be permissible so long as it is explicitly set out in the policy.

[11]This provision of the endorsement relied upon by Universal is part of the definition of the insured with respect to the automobile hazard as defined in that endorsement. That hazard, however, is defined to exclude automobiles "while rented to others." Thus the definition of insured in the endorsement, including its exclusion of permissive users with other insurance, is apparently inapplicable to coverage of rented cars. Universal argues, however, that *if* the exclusion of rented cars from the automobile hazard is invalid under *Wildman,* then the automobile hazard must be read as including coverage of rented cars and the definition of insured in the endorsement determines which users of rented cars receive coverage under the policy.

or his agent or employee shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; . . ." (Italics added.)

Subdivision (f) permits an exclusion of permissive users having other valid and collectible insurance only when the named insured is engaged in selling cars or some other business specified in that subdivision. (*Great American Ins. Co.* v. *Globe Indem. Co.* (1970) 8 Cal.App.3d 938, 945 [87 Cal.Rptr. 653]; *National Emblem Ins. Co.* v. *Rios* (1969) 275 Cal. App.2d 70, 75, fn. 1 [79 Cal.Rptr. 583].) Since the leasing of cars is not among the businesses specified in the sections, Universal is compelled to argue that National did something more than lease cars. ■ Indeed Universal contends that National engaged in selling cars,[12] and that its standard form lease, of which the lease to Hamlin is a prototype, constitutes, as a matter of law, a contract of conditional sale.

Universal's contention is barred by collateral estoppel. In the personal injury action the Metzes obtained a judgment against National for $10,000, National's imputed liability as owner under Vehicle Code sections 17150 and 17151. Vehicle Code section 17156 provides that "If a motor vehicle is sold under a contract of conditional sale whereby the title to such motor vehicle remains in the vendor, such vendor . . . shall not be deemed an owner within the provisions of this chapter, . . ." Thus the judgment against National in the personal injury action could not have been rendered against it if it had conditionally sold the car to Hamlin because in that event it could not be deemed an owner of the car. The judgment thus necessarily established that National was not a conditional vendor of the Lincoln. Since Universal was notified of the personal injury suit but declined to participate in the litigation, it is bound by that judgment. (See *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 561 [334 P.2d 881].)

In contending that National was a conditional vendor of automobiles, Universal relies primarily on the specific terms of the agreement between National and Hamlin. Since the prior judgment has determined that this very contract is *not* an agreement of sale, but a lease agreement, we are

---

[12]Universal's brief suggests that National was in the business of "delivering" cars within the meaning of section 11580.1, subdivision (f). Although National may on occasion deliver a car to a lessee, this act is clearly incidental to the primary business of leasing the cars.

necessarily impelled to conclude that National is not engaged in the business of selling automobiles.

■ As we noted earlier, section 11580.1, subdivision (f), permits the exclusion of those permissive users who have other insurance applicable to the loss in question only when the insured is engaged in selling automobiles or in a business listed in that subdivision. Since National's commercial activity does not fall within the terms of subdivision (f), we conclude that its policy may not lawfully deny coverage to this class of permissive users.

4. *Insurance Code section 11580.1, subdivision (d) required coverage of permissive users "to the same extent" as the coverage afforded the named insured; the limitation on coverage in endorsement UU 3050 is therefore ineffective.*

Endorsement UU 3050 of Universal's policy provides that when a person "not insured under the provisions of this policy and attached forms becomes an Insured in conformity with the Financial Responsibility Laws . . ., such insurance as is afforded by this policy" for bodily injury liability is limited to $10,000 for each person and $20,000 for each accident. Universal argues that Hamlin, as the driver of a rented car, was excluded from coverage; that if the exclusion is invalid because of conflict with section 11580.1, then Hamlin became an insured "in conformity with the Financial Responsibility Laws" of California, and his coverage is limited by the terms of this endorsement.

Insurance Code section 11580.1, subdivision (d), required as of 1965, coverage of permissive users "to the same extent that coverage is afforded such named insured." Universal argues that "to the same extent" requires only identical coverage of risks; plaintiffs maintain that it also requires identical policy limits. Although the validity of a policy provision providing different limits for the named insured and permissive users has been discussed in several cases, none has resolved that issue.[13]

An examination of the legislative history of Insurance Code section

---

[13]In *Clark* v. *Universal Underwriters Ins. Co.* (1965) 233 Cal.App.2d 746, 748 [43 Cal.Rptr. 822], the court, in holding "a so-called 'garage endorsement' " invalid, stated that "[w]here, as here, the insurer has made no attempt to differentiate in the *amount* of coverage given to different insureds, it must be held liable to all insured to the same extent." (233 Cal.App.2d at p. 748; accord: *General Ins. Co.* v. *Truck Ins. Exch.* (1966) 242 Cal.App.2d 419, 425 [51 Cal.Rptr. 462]; *Pacific Indem. Co.* v. *Universal etc. Ins. Co.* (1965) 232 Cal.App.2d 541 [43 Cal.Rptr. 26]; see *Globe Indem. Co.* v. *Universal Underwriters Ins. Co.* (1962) 201 Cal.App.2d 9, 17 [20 Cal. Rptr. 73].)

11580.1, and subsequent amendments to that section, demonstrates that the Legislature, in requiring coverage of permissive users "to the same extent" as the named insured, intended to require identical policy limits. As first enacted in 1963, section 11580.1, subdivision (d), required coverage of permissive users "to the same extent that coverage is afforded such named insured," but subdivision (f) permitted the policies to limit coverage of permissive users to the minimum required by the financial responsibility laws.[14] Clearly subdivision (f)'s explicit authorization of different policy limits for the named insured and permissive users would serve no purpose unless the Legislature believed that, absent such authorization, subdivision (d) would bar such provisions.

In 1965 the Legislature amended subdivision (f). The amended subdivision, which governs the case at bar, restricted subdivision (f) to an insured who was engaged in selling cars or other enumerated businesses.[15] In other words, subdivision (f) as amended permitted insureds who engage in such businesses to limit coverage of permissive users to the financial responsibility limits; the plain implication is that policies covering insureds *not* engaged in those businesses cannot so limit the coverage of permissive

---

[14]The 1963 enactment states that a motor vehicle policy "may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured or his agent or employee shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; and in such event, the two or more policies shall not be construed as providing cumulative or concurrent coverage and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall apply. In the event there is no such other valid and collectible insurance, the coverage afforded a person other than the named insured, his agent or employee, may be limited to the financial rsponsibility requirements specified in Section 16059 of the Vehicle Code." (Stats. 1963, ch. 1259.)

[15]The 1965 enactment, quoted in part, *ante*, at page 53, states that "[w]here two or more policies are applicable to the same loss and one of such policies affords coverage to a named insured engaged in selling, repairing, servicing, delivering, testing, road testing, parking, or storing automobiles, such policies may contain a provision that the insurance coverage applicable to such motor vehicles afforded a person other than the named insured or his agent or employee shall not be applicable if there is any other valid and collectible insurance applicable to the same loss covering such person as a named insured or as an agent or employee of a named insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16059 of the Vehicle Code; and in such event, the two or more policies shall not be construed as providing cumulative or concurrent coverage and only that policy which covers the liability of such person as a named insured, or as an agent or employee of a named insured, shall apply. In the event there is no such other valid and collectible insurance, the coverage afforded a person other than the named insured, his agent or employee, may be limited to the financial responsibility requirements specified in Section 16059 of the Vehicle Code." (Stats. 1965, ch. 1968.)

users. (*Great American Ins. Co.* v. *Globe Indem. Co.* (1970) 8 Cal.App.3d 938, 948 [87 Cal.Rptr. 653]; see *National Emblem Ins. Co.* v. *Rios* (1969) 275 Cal.App.2d 70, 75, fn. 1 [79 Cal.Rptr. 583].) Finally, in 1970 the Legislature again amended section 11580.1 to provide specifically that the required coverage of permissive users did not apply to insurance afforded in excess of the financial responsibility requirements; the same statute repealed the now superfluous last sentence of subdivision (f).[16]

If section 11580.1, subdivision (d) during this entire period permitted any motor vehicle policy to limit coverage of permissive users to the financial responsibility limits, as Universal contends, all this legislative activity would have been pointless. ■ We reject that contention, and hold that section 11580.1, subdivision (d) required coverage of permissive users with the same policy limits as that afforded the named insured.[17]

### 5. *Modification of judgment.*

The trial court rendered judgment for the Metzes in the sum of $154,539.74, the unsatisfied balance of the personal injury judgment, plus accrued interest of $8,209.64, making a total of $162,749.38. ■ The Metzes concede that the inclusion of accrued interest in the judgment was improper, since it would make Universal liable for interest upon interest if the judgment were not immediately paid.

The judgment is modified to provide that cross-complainant have judgment against cross-defendant Universal Underwriters Insurance Company in the amount of $154,539.74, bearing interest at the rate of 7 percent

---

[16]The 1970 revision of Insurance Code section 11580.1 groups the obligatory provisions of a motor vehicle policy, including the provision requiring coverage of permissive users, into subdivision (b). It then provides in subdivision (a) that "none of the requirements of subdivision (b) shall apply to the insurance afforded under any such policy . . . to the extent that such insurance exceeds the limits specified in subdivision (a) of Section 16059 of the Vehicle Code, . . ."

[17]An insurer may provide that coverage of permissive users is excess to protection provided by the user's own policy. (*Pacific Indem. Co.* v. *Liberty Mut. Ins. Co.* (1969) 269 Cal.App.2d 793, 802 [75 Cal.Rptr. 559]; see *Home Indemnity Co.* v. *Mission Ins. Co.* (1967) 251 Cal.App.2d 942, 961-964 [60 Cal.Rptr. 544]; *American Motorists Ins. Co.* v. *Underwriters at Lloyd's London* (1964) 224 Cal.App.2d 81, 86 [36 Cal.Rptr. 297].) A provision making coverage of permissive users excess coverage, unlike provisions limiting or deleting coverage, does not diminish the resources available to a party injured by the permissive user, and thus does not offend the policy underlying the requirement for coverage of permissive users. (See *American Motorists Ins. Co.* v. *Underwriters at Lloyd's London* (1964) *supra*, 224 Cal.App.2d 81, 86.)

per annum from December 30, 1968, and as so modified the judgment is affirmed. Cross-complainants shall recover their costs on appeal.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Roth, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.