[Civ. No. 36303. Second Dist., Div. Two. Dec. 22, 1970.]

HENRY W. STELLA, et al., Plaintiffs and Appellants, v.
GREAT WESTERN SAVINGS & LOAN ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Judith B. Aaronson for Plaintiffs and Appellants.

Swerdlow, Glikbarg & Shimer, Irving A. Shimer and Maxine H. Linde, Brill, Hunt, DeBuys & Burby and Abe Mutchnik for Defendant and Respondent.

**OPINION**

**COMPTON, J.**—On May 7, 1964, plaintiffs, Henry and Virginia Stella, filed a complaint for rescission of an agreement to purchase real estate, cancellation of a promissory note and trust deed executed in connection

with said agreement, and damages for negligence in construction of a house which was the subject of said agreement. Several parties including Great Western Savings & Loan Association (hereinafter referred to as Great Western) were joined as defendants. On January 8, 1970, five years, eight months and one day after the filing of the complaint, an order of dismissal under section 583 of the Code of Civil Procedure was entered for failure to bring the case to trial within five years. Plaintiffs appeal from this order.

This litigation had its genesis when plaintiffs purchased a house in 1961. The purchase agreement which plaintiffs seek to rescind included the assumption of a first trust deed in favor of Great Western as security for the balance of the purchase price owing after a cash down payment.

Plaintiffs' house was one of several similar houses built between 1958 and 1961 as part of a residential tract development known as "Weathersfield" located in Ventura County.

Beginning some time in 1962, numerous homes (including plaintiffs') in the Weathersfield tract suffered severe damage allegedly the result of ill-designed foundations which were unable to withstand expansion and contraction of the adobe soil on which the foundations were built. Throughout 1962, 1963 and 1964, the affected homeowners instituted several suits against the developers, builders and sellers and against Great Western who provided the institutional financing for the Weathersfield tract homes.

After successfully demurring to the original complaint and unsuccessfully demurring to the amended complaint, Great Western filed its answer in this case on October 23, 1964.

In late 1964, a substantial number of the Weathersfield homeowners, but not plaintiffs, consolidated their cases against Great Western and in early 1965, proceeded to trial solely on the issue of the liability of Great Western. On April 19, 1965, Great Western's motion for nonsuit was granted in those cases. Immediately thereafter plaintiffs, in the consolidated actions, appealed.

On August 3, 1967, the Court of Appeal reversed the trial court and remanded the consolidated cases for trial. (See *Connor* v. *Great Western Sav. & Loan Assn.* (Cal.App.) 61 Cal.Rptr. 333, hg. granted by Supreme Court on October 5, 1967.)

On January 13, 1969, the Supreme Court issued its remittitur in *Connor* v. *Great Western Sav. & Loan Assn.,* 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609], upholding the appellate court's reversal.

Plaintiffs' attorney herein readily admits that between April 19, 1965,

the date of the granting of a nonsuit in the *Connor* case, and January 13, 1969, the date of the issuance of the remittitur in that case, she chose not to bring plaintiffs' case to trial. Thus, four years, eight months and six days after plaintiffs had filed their initial complaint, trial had not been set.

On May 9, 1969, five years and two days after filing the complaint, plaintiffs filed a memorandum to set this case for trial. Pretrial conference was set for January 5, 1970.

On December 24, 1969, defendant Great Western filed the motion for dismissal which was subsequently ordered on January 8, 1970.

Section 583 of the Code of Civil Procedure provides: "Any action heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced or to which it may be transferred on motion of the defendant, after due notice to plaintiff or by the court upon its own motion, unless such action is brought to trial within five years after the plaintiff has filed his action, except where the parties have filed a stipulation in writing that the time may be extended and except where it be shown that the defendant has been absent from the state or concealed therein and his whereabouts unknown to plaintiff and not discoverable to said plaintiff upon due diligence, in which event said period of absence or concealment shall not be a part of said five-year period."

Neither absence nor concealment of the defendant nor a written stipulation exists in this case.

The language of section 583 appears to be mandatory. (*Weeks* v. *Roberts,* 68 Cal.2d 802, 805 [69 Cal.Rptr. 305, 442 P.2d 361]; *Continental Pac. Lines* v. *Superior Court,* 142 Cal.App.2d 744, 749 [299 P.2d 417].)

However, in *Rose* v. *Knapp,* 38 Cal.2d 114, 117 [237 P.2d 981], the Supreme Court recognized that "[t]he provision of section 583, requiring dismissal if an action is not brought to trial within five years after the filing of the complaint unless the parties have stipulated for an extension of the period, is [although] mandatory . . . subject to implied exceptions." As stated in *Christin* v. *Superior Court,* 9 Cal.2d 526, 532-533 [71 P.2d 205, 112 A.L.R. 1153], ". . . [Section 583] is not designed arbitrarily to close the proceeding at all events in five years."

From this recognition of implied exception has evolved the concept that a plaintiff will not be penalized for failing to bring the case to trial within the five-year period if for "all practical purposes going to trial would be impossible . . . or *because proceeding to trial* would be both *impracticable* and *futile.*" (Italics added.) (*Christin* v. *Superior Court, supra,* p. 533.)

In *General Motors Corp.* v. *Superior Court,* 65 Cal.2d 88, at p. 96 [52 Cal.Rptr. 460, 416 P.2d 492], after tracing the development of the application of this concept the court concluded that ". . . it would be impossible to identify every situation in which a mechanical application of Code of Civil Procedure section 583 would produce injustice, . . . [thus] the statute must be applied in light of all the circumstances in the individual case, including the . . . nature of the proceedings themselves."

Prior cases have held that "futility" or "impracticability" sufficient to extend the time for bringing an action to trial may be created by concurrent and collateral litigation; but it is important to note that these cases have tolled the statutory period only where such collateral litigation has been a "step in the same action sought to be dismissed for lack of prosecution, or in litigation involving the very basis of the action sought to be dismissed, or in other litigation between the same parties or their privies." (*Union Bond & Trust Co.* v. *M & M Wood Working Co.,* 179 Cal.App.2d 673, 676 [3 Cal.Rptr. 920].)

■ Thus it is obvious, for example, that the time which has elapsed since entry of the order for dismissal and during which this appeal has been pending would not be charged against plaintiffs upon a remand to the trial court.

This appeal presents us with two crucial questions.

(1) Did the granting of a nonsuit and the subsequent appeal therefrom in *Connor* create a time period during which it would have been "impracticable and futile" for plaintiffs to proceed to trial?; and

(2) If so, what period of time was available to plaintiffs in which to bring the case to trial after the remittitur was issued in *Connor?*

In *Pacific Greyhound Lines* v. *Superior Court,* 28 Cal.2d 61 [168 P.2d 665], our Supreme Court focused its inquiry on whether there was evidence in the record which demonstrated that for some part of the five-year statutory period "it was *'impossible,'* or *'impracticable and futile'* either in an objective sense or *'due to excessive and unreasonable difficulty or expense,'* to proceed to trial."* (Italics added.) (P. 65.)

■ Thus, the question for this court to answer is whether, under all the circumstances of this case, plaintiffs have "established that the evidence before the trial court on the motion to dismiss was as a matter of law insufficient to sustain its implied finding that for . . . [three years, eight months and twenty-three days, the time between the granting of the nonsuit and the remittitur] it was 'impossible,' or 'impracticable and futile,' either in an objective sense or 'due to excessive and unreasonable difficulty or

expense,' to proceed to trial." (*Pacific Greyhound Lines* v. *Superior Court, supra.*)

The substantive issues in the case at bar are substantially the same, if not identical to the, fundamental issues involved in *Connor* v. *Great Western Sav. & Loan Assn.*, 69 Cal.2d 850, 856-857 [72 Cal.Rptr. 369, 447 P.2d 609].)

Plaintiffs' house suffered from the same allegedly defective foundation as those houses at issue in *Connor*. Plaintiffs, as in *Connor,* purchased their house by making a cash down payment and assuming a first trust deed in favor of Great Western. Plaintiffs seek the same relief as the parties in *Connor*.

The legal issue crucial to each case is precisely the same: Was Great Western as a lender furnishing the principal financing to a tract developer and home builder for land acquisition, home construction, and ultimate home purchase, liable for the negligent construction of said tract homes? The Supreme Court found in *Connor* v. *Great Western Sav. & Loan Assn., supra,* at p. 864, that, ". . . Great Western became much more than a lender content to lend money at interest on the security of real property. It became an active participant in a home construction enterprise." The court concluded that in light of the extensive proof of Great Western's involvement in the acquisition, construction, sale and financing of Weathersfield, Great Western could be held liable for the negligent construction of the Weathersfield houses.

The practical effect of *Connor* was to affix liability on the only defendant in that action, and in the instant action, which was capable of compensating plaintiffs for their loss, thereby justifying plaintiffs' decision not to proceed to trial.

Had plaintiffs proceeded to trial in 1964, unnecessary monetary expense, evidentiary duplication and legal complexity would have resulted, and a substantial amount of litigation might have been rendered meaningless. Additionally there was the possibility of inconsistent judicial determinations with the problems attendant thereto. (*Brunzell Constr. Co. of Nevada* v. *Wagner,* 2 Cal.3d 545, 554 [86 Cal.Rptr. 297, 468 P.2d 553].)

Plaintiffs' forebearance in awaiting the outcome of the *Connor* appeal in our opinion well served the interests of judicial economy.

In light of the unique circumstances presented by the instant case it is our opinion that *Connor* v. *Great Western Sav. & Loan Assn., supra,* represented litigation which involved the "very basis of the action sought to be dismissed" herein.

*Brunzell, supra,* at p. 554, requires an examination of the degree of hardship or prejudice to the defendants occasioned by the delay.

As early as 1964, Great Western was armed with notice of not only plaintiffs' claims but also the claims of at least 60 other such homeowners. Great Western has presumably conducted extensive discovery which is applicable not only to those parties involved in *Connor* but to these plaintiffs as well.

The decision in *Connor* ordered retrials in a number of cases which would have had to commence sometime after January of 1969. The evidence in those cases would be the same as the evidence in this case. Therefore, the problem or loss or destruction of evidence or the dimming of witnesses' memories, which section 583 of the Code of Civil Procedure seeks to avoid, will be no more acute in this case than in the *Connor* retrials.

It is contended by defendant that after this court rendered its opinion in August 1967, and thereby reversed the trial court's judgment of nonsuit in *Connor,* plaintiffs were sufficiently apprised of the legal status of Great Western's liability to proceed. This contention ignores the reality of the circumstances which confronted plaintiffs. Until the Court of Appeal first affixed liability on Great Western for its involvement in the construction of Weathersfield no other court in this state had ever held a savings and loan association liable for the negligent acts of its financed construction company. Plaintiffs correctly anticipated the subsequent granting of a hearing by the Supreme Court. Thus, in October 1967, when the Supreme Court agreed to decide the issue of Great Western's liability, plaintiffs' position, though bolstered by the Court of Appeal decision, remained unsettled. Until the Supreme Court rendered its opinion in December 1968, and issued its remittitur in January 1969, it was still impracticable and futile for plaintiffs to proceed to trial.

Having concluded that the pendency of the appeal in *Connor* interrupted the running of the five-year period, it remains for us to consider whether in light of plaintiffs' action following the decision in *Connor,* the trial judge was justified in dismissing the action in any event.

The cases draw an analogy between Code of Civil Procedure section 583 and statutes of limitation. They speak of the "implied exceptions" to section 583 as "tolling" the running of the statute.

These same cases, however, are not in concert as to the precise effect of this "tolling."

The Supreme Court said in *Pacific Greyhound Lines* v. *Superior Court, supra,* at pp. 64-65, that ". . . in computing the five-year period, time during which 'for all practical purposes, going to trial would be impossible,

whether this was because of total lack of jurisdiction in the strict sense, or because proceeding to trial would be both impracticable and futile,' is to be *excluded*." (Quoting from *Christin* v. *Superior Court, supra,* at p. 533.) (Italics added.)

In *Sherberne & Associates* v. *Vector Mfg. Co.,* 263 Cal.App.2d 68 [69 Cal.Rptr. 284], the court held that even where there exists a period of "impracticability and futility" the statute will not toll if there is sufficient time thereafter in which a plaintiff is able to proceed. The court in *Sherberne* found that ". . . there remained after . . . [the excluded period] *two and a half years* of the five-year period. There was no claim, and no support for one, that those two and a half years did not afford plaintiff plenty of time to make such discovery as it still desired to make, after the . . . vacation in discovery proceedings it was required to take. We are of the opinion that a further exception to the 'mandatory' requirement of section 583 should not be made because of a period of inactivity that is excusable so long before the end of the five years that time enough is left to overcome the effect of its imposition." (Italics added.) (*Sherberne Associates* v. *Vector Mfg. Co., supra,* at p. 73.)

In *Youngblood* v. *Terra,* 10 Cal.App.3d 533 [89 Cal.Rptr. 13], plaintiff was confronted with a dismissal under that provision of Code of Civil Procedure section 583, subdivision (b) requiring a retrial within three years after the granting of a motion for new trial.

Plaintiff sought an 80-day "exclusion" for a period during which his case had been ordered off calendar by the trial court.

The appellate court there held that even though the granting of such an "exclusion" could have permitted a setting within the three-year period, plaintiff was estopped from obtaining such relief because of a six-and-one-half-month delay in filing an "at issue memorandum" following the termination of the "exclusion" period.

It is significant to note that in both *Sherberne* and *Youngblood*, plaintiff consumed in excess of two years' time, exclusive of the period during which the statute was tolled, before bringing his case to trial.

Finally, in *General Motors* we find the following language: ". . . resolution of the issue should implement the general scheme of [§ 583] so far as possible, and courts should *not* ignore the guidance which the section provides.

"Pursuant to § 583 it is *not* within the discretionary power of the trial court to dismiss an action until two years after it has been filed; a plaintiff may not be penalized for failing to bring even the least compli-

cated case to trial during this period. Since the purpose of section 583 is to prevent avoidable delay, [cite omitted] this provision appears to represent a legislative determination that at least in the typical case a delay of two years is to be deemed unavoidable." (Italics added.) (P. 98.)

■ It would seem that the court's mandate to follow the guidance of section 583 in its entirety and the need for uniformity of application is best served by equating the section with statutes of limitation.

This is accomplished by simply setting aside the period during which the "futility and impracticability" existed and examining the aggregate "free time" which remains both before and after the exempt period in the light of the various provisions of section 583 of the Code of Civil Procedure.

Thus, beginning with the filing of the complaint the plaintiff is entitled to consume before and after the "tolling" period an aggregate of two years in bringing his case to trial before risking a discretionary dismissal and an aggregate of five years before a mandatory dismissal.

■ Applying this concept to the case at bar it appears that plaintiffs consumed 11 months and 12 days prior to the date that the statute was tolled. After the statute began to run again plaintiffs were afforded only 11 months and 26 days before the dismissal was entered. Thus at the time of the dismissal plaintiffs had only used 23 months and 8 days.

The motion to dismiss was heard and granted on the date set for the pretrial hearing. Plaintiffs still had at least 22 days within which to set the case for trial and possibly more depending on the trial court's discretion in applying section 583, subdivision (a).

The trial court erred in dismissing the action and the order is reversed.

Upon filing of the remittitur plaintiffs should proceed as expeditiously as possible to set the matter for trial keeping in mind the discretionary power of the court under section 583, subdivision (a) of the Code of Civil Procedure and superior court rule 203.5 adopted January 1, 1970.

Herndon, Acting P. J., and Fleming, J., concurred.