[Civ. No. 45647. Second Dist., Div. Five. Aug. 28, 1975.]

RESERVE INSURANCE COMPANY, Plaintiff and Appellant, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

Murchison, Cumming, Baker & Velpmen, Friedrich W. Seitz and Benjamin George Williams for Plaintiff and Appellant.

Ball, Hunt, Hart, Brown & Baerwitz, Joseph A. Ball, Albert H. Ebright and James M. Polish for Defendant and Respondent.

## OPINION

KAUS, P. J.—The trial court dismissed this action on motion of defendant Universal Underwriters Insurance Company ("Universal") because it had not been brought to trial within five years. (Code Civ. Proc., § 583, subd. (b).) Plaintiff Reserve Insurance Company ("Reserve") contends that the trial court was compelled to conclude, as a matter of law, that it would have been "impracticable and futile" for plaintiff to proceed to trial, because a significant legal issue in this case was involved in an appeal by Universal from a judgment in favor of a party aligned with plaintiff.

### FACTS[1]

In June 1966, Richard Metz was seriously injured by a driver driving a leased automobile. He sued the driver and the agency-owner.

An insurance policy written by Reserve covered the driver and the agency, with limits of $90,000. However, it was Reserve's position that

[1]The alignment of parties and insurance companies is more complex than the facts, as stated, would indicate. A more detailed version is set forth in *Metz v. Universal Underwriters Ins. Co.*, 10 Cal.3d 45, 48-50 [109 Cal.Rptr. 698, 513 P.2d 922], the pendency of which led to the failure to prosecute this action.

this insurance policy was excess over any other applicable insurance. Universal had issued a policy with limits of $250,000 to the agency. It claimed, however, that the policy did not cover the driver of the leased car and was excess over Reserve's policy if it did.

In May 1968, Reserve filed an action against Universal and Metz seeking a declaration that the Universal policy covered the driver and that its own policy was excess over Universal's policy. In July 1968 Universal answered the complaint and contended that the driver was not covered under its policy and that, in any event, its coverage was excess over all other valid and collectible insurance, and limited in amount to the minimum legal requirements. Later, in his personal injury action, Metz obtained a judgment against the driver and the rental agency for a total of about $255,000. That judgment became final. Then, in February 1969, Metz, who had been joined as a defendant in Reserve's declaratory relief action, filed a cross-complaint against Universal alleging that Reserve had paid $90,000 toward the judgment and that, after deducting $10,000 paid by another insurance company not here involved, there remained about $155,000 unpaid on the judgment, which Universal owed. Universal denied any liability to Metz.

In October 1969, the trial court granted a summary judgment in favor of Metz on the cross-complaint, ruling that Universal's policy fully covered the driver.

In November 1969, Universal filed a timely notice of appeal. Nearly four years later, in September 1973, the Supreme Court filed its opinion in *Metz* v. *Universal Underwriters Ins. Co., supra,* 10 Cal.3d 45, and held that Universal's policy did fully cover the driver of the rented car and—apart from an issue relating to interest—affirmed the judgment of the trial court in favor of Metz. (*Id.,* at p. 58.)

Reserve's complaint for declaratory relief had, as noted, been filed in May 1968. Thus, when the Supreme Court decided *Metz,* more than five years had elapsed. After the remittitur in *Metz* was filed, Reserve filed an at-issue memorandum. Universal then filed its motion to dismiss.

### DISCUSSION

Reserve contends that because the issue whether Universal's policy covered the driver was involved both in its action for declaratory

relief and in the cross-complaint brought by Metz, it would have been impracticable to proceed with the trial until that issue was finally decided in the *Metz* appeal.

We conclude, contrary to Reserve's position that, on the facts of this case, the trial court was not compelled to find that it would have been impracticable for Reserve to proceed, and that it therefore did not abuse its discretion in granting Universal's motion to dismiss.

The general rule is that, unless an action is brought to trial within five years after it has been filed, the action must be dismissed upon motion of the defendant. (See, *e.g., Crown Coach Corp.* v. *Superior Court,* 8 Cal.3d 540, 546 [105 Cal.Rptr. 339, 503 P.2d 1347], and cases collected.) Numerous decisions over the years have established "certain implied exceptions where it would be impossible, impracticable or futile due to causes beyond a party's control to bring an action to trial during the five-year period." (*Id.,* at p. 546, and cases collected.)

In *Brunzell Constr. Co.* v. *Wagner,* 2 Cal.3d 545 [86 Cal.Rptr. 297, 468 P.2d 553], the court held that the "impracticable and futile" exception could apply where legal complexities made it possible but not sensible for the plaintiff to proceed. There, the plaintiff could have brought the case to trial only against some of the defendants; proceedings against other defendant were legally impossible because of numerous pending appeals and injunctions. (2 Cal.3d at pp. 548, 551.) The trial court dismissed without considering the particular facts of the case, ruling as a matter of law that the mere fact of severability precluded the application of the "impracticable and futile" concept.

Reserve relies on the standards set forth in *Brunzell* for determining impracticability and futility. These "involve a determination of ' " 'excessive* and *unreasonable* difficulty or expense,' " ' in light of all the circumstances of the particular case;" a "consideration of a great variety of factors, including, among others, the expense, complexity, and quantity of the evidentiary duplication that severance would entail, the potential problems that inconsistent judicial determinations would produce, and the degree of hardship or prejudice to the defendants occasioned by the delay." (Italics in original. *Id.,* at p. 554.) " 'Impracticability' may vary not only as to different proceedings but as to different parties within the same proceeding. . . . [T]his exception to section 583 involves a judgment of practical realities, and artificial distinctions between participating litigants should be avoided." (*Id.,* at p. 555.)

However, the legal effect of "these diverse factual matters" is one which the "trial court is in the most advantageous position to evaluate . . . in the first instance . . . ." (*Id.,* at pp. 555-556.) Therefore, while in *Brunzell* the order of dismissal was reversed, the Supreme Court did not mandate a denial on remand, but merely directed the trial court to exercise its discretion.

However, even if *Brunzell* had directed the trial court not to dismiss, Reserve's attempt to fit the facts and mold of *Brunzell* to this case will not do. Factually, *Brunzell* involved multiple defendants in a dispute involving the construction of a casino in Reno and a complaint alleging, *inter alia,* fraud and misrepresentation, negligence and interference with contractual relationships. (2 Cal.3d at pp. 548-549.) This case involves no disputed or complex facts; a trial would have involved an exchange of paper and arguments concerning the interpretation of conceded insurance policies.

Reserve relies chiefly on *Stella* v. *Great Western Sav. & Loan Assn.,* 13 Cal.App.3d 732 [91 Cal.Rptr. 771]. There the plaintiffs, in May 1964, filed a complaint to rescind an agreement to purchase real estate. The basis for the action was the same as the action brought collectively by numerous other homeowners in *Connor* v. *Great Western Sav. & Loan Assn.,* 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224]. Though the Stellas survived a demurrer, a few months later in the *Connor* trial the defendant lender's nonsuit was granted and from that time until January 1969, when the Supreme Court issued its remittitur in *Connor,* the case was on appeal. (13 Cal.App.3d at p. 735.) In reversing an order of dismissal entered in favor of the defendant in the *Stella* case, the Court of Appeal held that in the "unique circumstances" presented, it would have been impracticable and futile for the *Stella* plaintiffs to bring their case to trial. (13 Cal.App.3d at pp. 737-738.)

The court pointed out that the issues in the *Stella* case were substantially the same as, if not identical to, the fundamental issues involved in *Connor;* that the legal issue crucial to each case was precisely the same; that the trial in 1964 would have resulted in unnecessary monetary expense, evidentiary duplication, and legal complexity and, moreover, until the Court of Appeal first affixed liability on the defendant for its involvement in the construction of the defective houses involved, no other court in this state had ever held a construction lender liable for the negligent acts of a construction company financed by it. (13 Cal.App.3d 738-739.)

None of the factors which led the *Stella* court to find an abuse of discretion in dismissing is present here. In *Stella* the plaintiffs were in the position of having to try a case involving complex, technical, factual issues concerning the physical underpinnings of their home, before the legal foundation of their claim had been recognized by any court of last resort. Understandably, the *Stella* court refused to penalize them for serving "the interests of judicial economy" by not attempting to take up the trial court's time with factual issues on a legally quixotic quest. This case, as already noted, could have been tried "on the papers" as far as the facts are concerned. Further there is an obvious difference in the type of legal issue pending in the appellate courts. The only "law" the Stellas had going for them was the trial court's overruling of Great Western's demurrer to their amended complaint.[2] The *Connor* plaintiffs, on the other hand, had been nonsuited after an extensive trial. The legal proposition on which both the *Connor* and the *Stella* claims rested was, to say the least, an imaginative application of previously recognized principles.

In contrast, Reserve was not waiting for a significant legal break-through to vitalize its claim. The trial court had made a definitive ruling on the applicability of the Universal policy in granting a motion for summary judgment and—as the *Metz* opinion subsequently proved—the appellate courts did not have to resort to novel doctrine to uphold it.

We point out, however, that the fact that the very policy in issue between Reserve and Universal was being considered on appeal in the *Metz* case, should not blind us to the logical conclusion to which Reserve's position on this appeal inevitably leads: it probably happens hundreds of times every year that an issue which may be decisive on pending litigation is before the appellate courts of this state. The fact that here it related to the same insurance policy that was involved in the untried case, merely helped Reserve to spot it. Surely, it cannot be urged that it is "impracticable and futile" as a matter of law to try a lawsuit just because the trial court will be asked to resolve a difficult legal question, the answer to which may be obvious in a few years. If it were, the trial of almost every case could be postponed indefinitely.

---

[2]The extent of judicial encouragement the Stellas received from the fact that Great Western's demurrer to their complaint was overruled depends on a factor unknown to us: the specificity with which they pleaded the nature of Great Western's involvement in the construction project.

Since the exercise of the trial court's discretion is amply supportable on the basis that the pendency of the *Metz* appeal did not make it impracticable or futile to bring this case to trial, we need not discuss whether the order of dismissal is also supportable by the pendency of issues between Reserve and Universal that were not involved in *Metz* v. *Universal Underwriters Ins. Co., supra,* 10 Cal.3d 45.[3]

Affirmed.

Stephens, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 23, 1975.

---

[3]These issues relate, essentially, to the parties' opposing claims concerning excess coverage. In part they would obviously have become moot had Universal prevailed in the *Metz* litigation.