[Civ. No. 48270. Second Dist., Div. Five. Sept. 14, 1976.]

STANDARD OIL COMPANY OF CALIFORNIA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
SANDRA LEE CARTT, Real Party in Interest.

## COUNSEL

Pillsbury, Madison & Sutro, Noble K. Gregory, C. Douglas Floyd, Michael H. Salinsky, Lawler, Felix & Hall, Thomas E. Workman, Jr., J. Richard Morrissey and Bernard E. LeSage for Petitioner.

No appearance for Respondent.

Hecht & Diamond, Hecht, Diamond & Greenfield and Roger Jon Diamond for Real Party in Interest.

## OPINION

KAUS, P. J.—This is the second time that *Cartt v. Standard Oil,* a consumer class action pending in the respondent court, has been before us. In *Cartt v. Superior Court,* 50 Cal.App.3d 960 [124 Cal.Rptr. 376], we set aside trial court orders concerning notice to plaintiff's class and, in substance, ordered the trial court to fashion a form of notice likely to reach enough class members to preserve the integrity of the class action process.

After that decision, in November 1975, the trial court ordered notice by a single publication in "one of the news sections" of 36 newspapers in the Southern California area.

Trial was set for January 7, 1976, five years, eight months and eighteen days after the complaint was filed. The trial court order involved in the first writ matter had been made after hearings on February 3, February 6 and February 18, 1975. The January 7, 1976 trial date was set on the assumption—not shared by Standard—that the previous proceedings in this court tolled the running of the five-year statute as of February 3, 1975. If so, a trial date of January 7, 1976 would have been within the five-year period.

Defendant Standard Oil disagreed that time was tolled as of February 3. On December 24, 1975, it moved to vacate the trial date and for an order dismissing the action under Code of Civil Procedure section 583, subdivision (b). Its theory was and is that time was tolled no earlier than February 18, 1975—the date of the order reviewed in *Cartt v. Superior Court.* Actually, Standard maintains that time was not tolled until March 13, 1975 when we granted a stay. (See *Cartt v. Superior Court, supra,* 50

Cal.App.3d 960, 963, fn. 1.) It does not press the point, however, since even if the relevant date is February 18, 1975, the five-year limit was exceeded by about two weeks. The arithmetic is explained below.[1]

Since the motion could not be heard until late in January 1976—after the scheduled trial date—the parties stipulated that time was tolled from January 7, 1976, the scheduled trial date, until the 60th day after the final determination of defendant's motion to dismiss.

On January 19, 1976, the trial court denied Standard's motion to dismiss, finding that "subsequent events show that it was impracticable and futile to go to trial by reason of substantial and unnecessary expense, which situation was engendered by the court order of February 3, 1975, and that plaintiff's lack of diligence in bringing the action to trial does not outweigh the impracticability and futility of trying the case as determined by the subsequent ruling of the appellate court and the trial court upon remand."[2]

Defendant Standard Oil then filed this writ petition asking this court to order the trial court to dismiss the action.[3] This time plaintiff Sandra Cartt is the real party in interest. We granted an order to show cause.

FACTS

The class action complaint was filed on April 20, 1970. Although the exact number of class members is unknown, plaintiff's estimate of 700,000 persons is as good as any.

Substantial activity in the form of discovery took place between April 1970 and February 1972. However, an informal class action conference was not held until August 1973, and it was not until August 1974—when the action was over 51 months old—that plaintiff noticed the hearing necessary to determine whether the matter was appropriate for class

---

[1]The January 7, 1976, trial date follows the filing of the complaint by five years, eight months and eighteen days. The previous proceeding in this court tolled the running of the five-year statute until October 23, 1975, the date when the Supreme Court denied a hearing. (E.g., *Fannin Corp.* v. *Superior Court*, 36 Cal.App.3d 745, 750 [111 Cal.Rptr. 920] and cases collected.) If time was not tolled until February 18, 1975, the hiatus was only eight months and five days. If the relevant date is February 3, 1975, the January 7, 1976, trial date is two days under the wire.

[2]This ruling was not made by the judge who had presided over the February 1975 hearings.

[3]Standard also challenges the trial court's single-publication order. We need not decide that issue.

action disposition. On January 17, 1975, the court ruled that the case was maintainable as a class action and directed that the parties submit memoranda and evidence concerning the issue of notice to the class.

We now reach the critical period in this case, February 3 through February 18, 1975. On February 3, 1975, the court ordered that notice be given by first class mail to approximately 700,000 current Standard Oil credit card holders residing in Southern California. At the February 3 hearing, plaintiff's attorneys proposed notice by publication under Government Code section 6064, or, if notice was to be by mail, that it be paid for at least in part by defendant. (See *Cartt* v. *Superior Court, supra,* 50 Cal.App.3d 960, 965.) The court rejected these proposals, but agreed to consider a means of personal notice other than the mail on February 6.

On February 6, the court denied plaintiff's motion to modify the February 3 order, but set the matter for February 18 "for further discussion on alternatives to [the] present order for giving notice to the class." The court commented at the February 6 hearing that it was "also taken by the suggestion of plaintiff's counsel that the class may be redefined and notice be given by some means other than mail itself."

Finally, on February 18, after more discussion, the court ruled as follows: "[T]he order of February 3, 1975 requiring personal service of notice of pendency to be given by mail individually addressed and posted will not be modified. However, the Court modifies the order of February 3, 1975 to provide that notice will be given to credit card holders by first class or third class mail individually addressed and posted."

Plaintiff's writ petition was filed on February 26, 1975.

Facts will be added in the discussion.

### DISCUSSION

The parties agree on the general rule: "[U]nless an action is brought to trial within five years after it has been filed, the action must be dismissed upon the motion of the defendant. [Citation.] Numerous decisions over the years have established 'certain implied exceptions where it would be impossible, impracticable or futile due to causes beyond a party's control to bring an action to trial during the five-year period.' [Citation.]"

(*Reserve Ins. Co.* v. *Universal Underwriters Ins. Co.,* 51 Cal.App.3d 57, 61 [123 Cal.Rptr. 763].)

The decisions have not built a fence around the concepts of impossibility, impracticability or futility. (E.g., *General Motors Corp.* v. *Superior Court,* 65 Cal.2d 88, 96-97 [52 Cal.Rptr. 460, 416 P.2d 492]; *Rose* v. *Knapp,* 38 Cal.2d 114, 117-118 [237 P.2d 981]; *McRoberts* v. *Gorham,* 18 Cal.App.3d 1040, 1045 [96 Cal.Rptr. 427]; *Bosworth* v. *Superior Court,* 143 Cal.App.2d 775, 779-780 [300 P.2d 155]; see also, *Brunzell Constr. Co.* v. *Wagner,* 2 Cal.3d 545, 549-551 [86 Cal.Rptr. 297, 468 P.2d 553].)[4] Nevertheless, it has never been held or even hinted that time stands still while the parties are going through the necessary motions of getting a case ready for trial.

On the contrary, it is quite firmly established that "the time consumed by the delay caused by ordinary incidents of proceedings like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar or securing a jury trial are not within the contemplation of the implied exceptions for exclusion from a computation of the applicable period. [Citations.] '[T]he duty rests upon a plaintiff at every stage of the proceedings to use due diligence to expedite his case to a final determination.' [Citations.]" (*Fannin Corp.* v. *Superior Court,* 36 Cal.App.3d 745, 750 [111 Cal.Rptr. 920]; see also, *King* v. *State of California,* 11 Cal.App.3d 307, 310 [89 Cal.Rptr. 715].) In a class action the "ordinary incidents of proceedings" include class action certification and notice to the class. (*Massey* v. *Bank of America,* 56 Cal.App.3d 29, 32-33 [128 Cal.Rptr. 144].)

Plaintiff's major contention is that the erroneous February 3 order made it impossible, impracticable, or futile to proceed to trial. The chief problem with this contention is that it defies the record, which establishes that the February 3 order was tentative.

Plaintiff asserts that "[e]veryone treated the February 3rd order as final"; in fact, no one did. Most important, plaintiff, who had the option of standing on her legal position asserted at the February 3 hearing, declined to accept the court's ruling as final.[5]

---

[4]Many of the "impossible, impracticable or futile" cases are collected in *Flamer* v. *Superior Court,* 266 Cal.App.2d 907, 912-913, footnote 3 [72 Cal.Rptr. 561].

[5]Plaintiff points out that a trial date—April 18—was set on February 3, but does not explain how the setting of a trial date made any further activity on the notice issue impossible. Certainly the setting of a trial date limited plaintiff's options, but here she meets herself coming through the door: the date was set because the five-year period was to have expired on April 20, 1975.

On February 3, the court, having rejected plaintiff's theories of publication in legal newspapers or of notice paid by defendant, asked plaintiff's attorney if he could prepare the form of notice by February 6. The attorney said: "Your Honor, I'm thinking out loud now as far as the court's ruling on the cost of notice is concerned. If plaintiff is going to seek a writ . . ., I'm wondering whether it is appropriate now to go into this particular form. It may become moot, because I doubt very much whether the plaintiff can afford to pay for this cost, being a schoolteacher, but I'm also concerned about the 5-year statute and whether a writ would stay the 5-year statute."

The court recognized plaintiff's "problems in connection with the 5-year statute," and offered to accept a "suggestion concerning the time when you wish" to submit the proposed form of notice, realizing that "you may wish to . . . seek a writ before that day."

Plaintiff's attorney, however, agreed to "have something prepared" by February 6.

After further discussion, counsel said: "[W]ith respect to the ruling on the cost, does the court understand that if the court's ruling stands on costs that this action may very well be dismissed because the plaintiff cannot afford to pay for that cost? THE COURT: Yes, I understand that. [PLAINTIFF'S ATTORNEY]: And even taking that into consideration it's still the court's ruling? THE COURT: Yes."

Plaintiff's counsel, however, refused to accept this as the final expression of the court's views, argued some more, and was successful in getting the court to agree that on February 6 it would consider the possibility of "personal notice by other than the mail." Apparently to make sure that all options remained open, counsel then renewed his argument to persuade the court to shift the cost of giving notice to Standard.

Nothing having been finally resolved on February 3, the parties returned to court on February 6. On that date, plaintiff's attorney, pointing out that the February 3 order "was a substantial shock," stated that "a number of possibilities have come to my mind as to how we can proceed from this point. . . . One would be to reduce the size of the class . . . Another possibility . . . would be a manner of notice other than first class mail now. . . . Another possibility, your Honor, is to have an opt-in

notice instead of an opt-out notice. . . . And the other thought which came to our mind . . . is a possibility . . . of personal delivery by a number of volunteers . . . ." Plaintiff's attorney also presented the "possibility of not doing anything but, rather, waiting for the results of a petition for writ of mandate . . . ." He was, however, concerned whether the filing of a petition would stay the five-year statute: "[W]e would also want to explore that possibility without giving up our right later on to then try to fulfill the notice requirement, if our petition for writ of mandate were unsuccessful."

Nor did the court act as if the February 3 order was final. After an unreported conference in chambers on February 6, the court stated that it was concerned "about the practical problem to the plaintiff of discharging the burden of mailing notice in the manner set out in the minute order of February 3," noted that it was "very loath to see this or any other case end without trial on the merits" and stated that it would "entertain at any time that counsel wish to move the court for an order to effect notice in some way different from the [February] 3rd notice."

It was not until the hearing on February 18 that plaintiff's attorney said: "[I]n view of this court's ruling and this court's refusal to modify its previous ruling, that as a practical matter, plaintiff cannot go forward as she has indicated in her declaration, and that what plaintiff will no doubt do is seek a writ of mandate either from the Court of Appeal or the California Supreme Court on this particular issue."

What happened was simply this: Faced with an immediate unfavorable ruling on February 3, counsel, with commendable tenacity, kept the issue alive for an additional 15 days until February 18, when the court, departing somewhat from its original intention by permitting notice by third class mail, made an order that was ripe for review by mandate or prohibition. This investment of time resulted in nothing but a " 'delay caused by the ordinary incidents of the proceedings. . . .' " (*Crown Coach Corp.* v. *Superior Court,* 8 Cal.3d 540, 548 [105 Cal.Rptr. 339, 503 P.2d 1347]; *Fannin Corp.* v. *Superior Court, supra,* 36 Cal.App.3d 745, 750.) The decision to devote additional days to the effort to obtain a more favorable ruling was plaintiff's and gives her no more right to a suspension of the running of the five-year statute, than would, for example, time " 'consumed in service of process, disposition of demurrers, amendment of pleadings,' " and so forth. (*J. C. Penney Co.* v.

*Superior Court,* 52 Cal.2d 666, 670 [343 P.2d 919].)[6] If the February 1975 hearings had been held a year or two earlier, any suggestion that the 15 days consumed in settling the question of notice were "time out" would be considered frivolous. That time had become crucial was solely a consequence of plaintiff's delay in taking certain steps necessary to ready a class action for trial.[7] True, the order eventually made by the trial court was erroneous; plaintiff is, however, not entitled to be credited with more time than it took to correct the error.[8]

What plaintiff really wants us to do is to rewrite the record to reflect what probably would have happened on February 3 if her attorney had submitted to the ruling the court was about to make. This we cannot do.

Plaintiff also claims—whether as a make-weight or as a separate argument is not clear—that the trial court's ruling that notice was to be given by mail made it "impossible, impracticable or futile" to proceed because for her the cost of mailing was prohibitively expensive. Since that argument also rests on the false assumption that a final order was

[6]"It is argued that the plaintiff could have done nothing from May, 1946, when the original complaint was filed, to November, 1947, when the first demurrer was sustained; that this period of 19 months must be excluded in the computation of the five-year period; that the appellant could not have set the case for trial since no answer to the amended complaint was ever filed by the city; and that the city's attorney made many promises to file an amended demurrer and to expedite the matter, which were not kept. The matters thus relied on are not sufficient to bring this case within any of the established exceptions, and the record sustains the trial court's finding to that effect." (*Anderson* v. *City of San Diego,* 118 Cal.App.2d 726, 730 [258 P.2d 842].)

[7]In fact, even if on February 3 the court had followed one of plaintiff's own suggestions—publication of notice under section 6064 of the Government Code—it would have been a miracle if the April 20 deadline had been met. In addition to the 28 days needed for the publication, the form of notice had to be settled, the notices placed and the class members given a reasonable time to "opt out."

[8]Actually, no case has been cited or found that holds that the five-year statute was tolled when the order attacked by the previous writ proceeding was made, rather than when the petition was filed on February 26 or when we issued a stay. As noted, Standard concedes only that time stopped running no earlier than March 13, 1975 when we issued a stay order. (See *Cartt* v. *Superior Court, supra,* 50 Cal.App.3d 960, 963, fn. 1.) In the roughly analogous situation of an intervening appeal, the rule seems to be that time is not tolled until the notice of appeal is filed, whether or not such filing deprives the trial court of jurisdiction to proceed. (*Christin* v. *Superior Court,* 9 Cal.2d 526, 530-531 [71 P.2d 205, 112 A.L.R. 1153]; *Fannin Corp.* v. *Superior Court, supra,* 36 Cal.App.3d 745, 750; *Wilson* v. *Barry,* 119 Cal.App.2d 621, 624-625 [259 P.2d 991].) Since, however, the analogy between intervening appeals and intervening writ proceedings is not perfect, it may well be that the time-out starts when the order attacked by the writ is made. This would not help plaintiff who, of necessity, contends for the date when the trial court first tentatively expressed the views which led to its ultimate order.

made on February 3, it needs no extended refutation; we must, however, point out that to the extent it is based on our opinion in *Cartt* v. *Superior Court,* it is not justified. Although we did mention, by way of background, that the cost of mailing, as ordered by the court, was quite out of plaintiff's financial reach (*id.,* at p. 965), our eventual holding was that "nothing in this opinion must be construed to compel [the trial court] to make an order which plaintiff can afford. The credit balance in plaintiff's checking account is not a ceiling on what it takes to preserve the integrity of this litigation as a class action." (*Id.,* at p. 973.)

The discussion so far would be academic if there were merit to plaintiff's final contention: That time was tolled for almost 20 months between April 1973—when an administrative law judge dismissed a Federal Trade Commission complaint that Standard's advertisements, which also led to this class action, were "false, misleading and deceptive"—and November 1974 when the commission itself rendered a decision against Standard. (See *Cartt* v. *Superior Court, supra,* 50 Cal.App.3d 960, 963-964.)

When last heard of the FTC matter was still winding its way through the federal courts. Plaintiff does not contend that time is tolled until it is finally determined. (Cf. *Stella* v. *Great Western Sav. & Loan Assn.,* 13 Cal.App.3d 732, 737-738 [91 Cal.Rptr. 771].) She claims, rather, that time did not run while the administrative law judge's dismissal was in effect because Standard had filed it in the respondent court, together with extravagant claims concerning its legal impact on the class action.

Of course plaintiff does not concede that Standard's claims were correct;[9] nor does she claim that either she or the respondent court were taken in by them, or that they legally impeded the preparation and processing of the class action for eventual trial. Standard's winning of the first round of the administrative fight may have been dispiriting; it did not, however, justify plaintiff in throwing in the towel. The point has no merit.

In conclusion, the trial date of January 7, 1976, was beyond the five-year period, exclusive of time properly tolled. The trial court, therefore, abused its discretion in denying defendant's motion to dismiss

---

[9]Predictably, as Standard's luck before the FTC changed from good to bad, the parties more or less traded positions with respect to the legal significance of the FTC matter on plaintiff's class action.

the action under section 583, subdivision (b). The trial court is directed to vacate its order of January 19, 1976, denying defendant's motion and to enter an order dismissing the action.

Stephens, J., and Ashby, J., concurred.

A petition for a rehearing was denied October 1, 1976, and the opinion was modified to read as printed above. The petition of the real party in interest for a hearing by the Supreme Court was denied December 2, 1976.