Filed 3/29/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ANGELA REL et al., Plaintiffs and Appellants, v. PACIFIC BELL MOBILE SERVICES et al., Defendants and Respondents. | A152225 (San Mateo County Super. Ct. No. CIV436164) |

The trial court dismissed this proposed class action lawsuit because plaintiffs failed to comply with Code of Civil Procedure section 583.310,[1] which requires an action to "be brought to trial within five years after the action is commenced against the defendant." The main issue here is whether a pretrial order dismissing the class claims qualifies as a "trial" for purposes of the five-year dismissal statute. In class action lawsuits, such a pretrial order is treated as a final judgment and is therefore immediately appealable under the so-called death knell doctrine. A second issue is whether an appellate decision reversing a death knell order triggers a three-year extension under section 583.320, subdivision (a)(3). Both are issues of first impression.

We conclude a death knell order does not constitute a trial under the five-year dismissal statute and an appellate decision reversing such an order does not trigger the three-year extension. Accordingly, we affirm.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

1

**A.**

*The Death Knell Doctrine*

The one final judgment rule is a fundamental rule of appellate practice: " ' "an appeal may be taken only from the final judgment in an entire action." ' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756; § 904.1.)  An exception to the one final judgment rule is the death knell doctrine, which is unique to class actions.  (*Baycol Cases*, at p. 757.)  "This doctrine provides that an order which allows a plaintiff to pursue individual claims but prevents the plaintiff from maintaining the claims as a class action, is treated as a final judgment.  [Citation.]  The order is immediately appealable because it 'effectively r[ings] the death knell for the class claims.' " (*Aleman v. Airtouch Cellular* (2012) 209 Cal.App.4th 556, 585–586, citing *Baycol Cases*, at p. 757.)

**B.**

Tucker II

In the case at bar, we have considered two death knell rulings in prior related appeals: *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201 (*Tucker II*) and *Rel v. Pacific Bell Mobile Services* (May 9, 2016, A144349) (nonpub. opn.) (*Rel*).  The procedural history of this case is complex—involving 15 years of litigation and several prior appeals—and we refer the reader to our prior opinions for details.  On our own motion, we take judicial notice of *Tucker II* and *Rel* as well as the underlying appellate records.  (See Evid. Code, § 452, subd. (d).)  We first discuss *Tucker II*.

Diane Tucker initiated this action in December 2003 as a putative private attorney general under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) against defendants Cingular Wireless LLC and Pacific Bell Mobile Services (collectively, Cingular).  Tucker challenged Cingular's marketing of "bucket plans," which essentially purported to give subscribers a specified number of minutes of mobile phone use for a monthly rate.  Plaintiffs Monica Hodge and Angela Rel (collectively, Hodge) were added to the action after Tucker lost standing to proceed with the unfair competition claims.  (*Tucker II, supra*, 208 Cal.App.4th at pp. 208–209 & fns. 2, 4.)

After several years of motions, discovery, and appellate proceedings not relevant here, Hodge filed a fifth amended complaint in 2011. Cingular demurred. The trial court sustained the demurrer to the class allegations without leave to amend, sustained the demurrer to the individual fraud claims with leave to amend, and otherwise overruled the demurrer. Hodge appealed the dismissal of the class allegations. (*Tucker II, supra,* 208 Cal.App.4th at p. 209 & fn. 6.)

In *Tucker II*, we held the order was appealable under the death knell doctrine. (*Tucker II, supra*, 208 Cal.App.4th at p. 209 & fn. 7.) On the merits, we reversed in part, concluding the trial court improperly dismissed the unfair competition claims seeking class-wide injunctive relief, and remanded for a determination of whether those claims were appropriate for class treatment. (*Id.* at pp. 208, 221–225, 228–231.) Our remittitur issued on December 11, 2012.

## B.

### Rel

The operative seventh amended complaint was filed in August 2013. According to the seventh amended complaint, Angela Rel had not been a subscriber since November 2004, and Cingular later discovered Monica Hodge voluntarily changed her rate plan in mid-2014. Cingular filed a motion to strike the class claims in the seventh amended complaint, arguing Hodge lacked standing. The trial court granted the motion, and Hodge filed a second death knell appeal.

We reversed in *Rel, supra,* A144349. We concluded the trial court erred because "whether a plaintiff may obtain a particular type of *relief*—such as restitution or an injunction—does not dictate whether a plaintiff lacks *standing* to assert the underlying cause of action." Our remittitur issued on August 15, 2016.

## C.

### *Motion for Mandatory Dismissal*

Over the last few years, the trial court repeatedly raised concerns about the five-year dismissal statute. In 2013, the trial court cautioned the parties that the case would need to proceed to class certification and ordered counsel to be ready to discuss "the five

3

year statute end date." The following month, the court ordered the parties to determine the time remaining for trial. In January 2014, the parties stipulated that "Plaintiffs were initially required to bring this action to trial by December 8, 2008," but the parties agreed to toll the deadline 2,327 days for various reasons, including the death knell appeal in *Tucker II*. They further stipulated that the five-year statute "currently expires no earlier than April 23, 2015." A year later, the court again expressed concern about the five-year statute and ordered the parties to submit letter briefs on their view of the deadline. Cingular calculated the deadline to be September 7, 2015, which it later (following the decision in *Rel*) revised to February 20, 2017. It is worth noting this last date assumes the deadline had been tolled approximately 3,000 days.

In March 2017, Cingular moved for mandatory dismissal, arguing the five-year statute had run on February 20, 2017. Hodge contended section 583.310 had no application because a "trial or partial trial" already occurred on two separate occasions—when the orders appealed in *Tucker II* and *Rel* were decided. Hodge also argued that our decisions in *Tucker II* and *Rel* triggered a three-year extension to bring the case to trial pursuant to section 583.320, subdivision (a)(3) and the death knell doctrine. At argument on the motion, Hodge's counsel conceded Cingular's calculation of the five-year deadline but argued section 583.320, subdivision (a)(3) applied and provided an additional three years after the *Rel* remittitur.

The trial court granted Cingular's motion for mandatory dismissal, under section 583.310, noting application of the three-year statute (§ 583.320, subd. (a)(3)) following a successful interlocutory appeal under the death knell doctrine presented an issue of first impression.

### DISCUSSION

Hodge argues the five-year dismissal statute is inapplicable because the trial court's two death knell orders were tantamount to trials and that our decisions in *Rel* and *Tucker II* triggered a three-year extension of the deadline. The argument is without merit.

4

**A.**

"An action shall be brought to *trial* within five years after the action is commenced against the defendant." (§ 583.310, italics added.) This requirement is mandatory and not subject to extension, excuse, or exception except as expressly provided by statute. (§ 583.360, subds. (a)–(b).) "The purpose of the five-year dismissal statute is to prevent the prosecution of stale claims where defendants could be prejudiced by loss of evidence and diminished memories of witnesses. [Citation.] The statute also protects defendants from the annoyance of having unmeritorious claims against them unresolved for unreasonable periods of time." (*Munoz v. City of Tracy* (2015) 238 Cal.App.4th 354, 358–359.)

We independently review the trial court's interpretation of the dismissal statute, and we apply the familiar rules of statutory construction. (See *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724 (*Bruns*).)

**B.**

Hodge argues, first, the statute was satisfied because the two death knell rulings each constituted a trial under section 583.310. Under Hodge's reading of the statute, the action went to trial in 2011, when the trial court sustained Cingular's demurrer to the class claims in the fifth amended complaint, and again in 2015, when the trial court granted Cingular's motion to strike the class claims in the seventh amended complaint. We disagree.

This case obviously does not concern "[t]he archetypal 'trial' . . . when all of the issues tendered by the pleadings are heard before a trier of fact resulting in a decision upon which is entered one final judgment." (*In re Marriage of Dunmore* (1996) 45 Cal.App.4th 1372.)

Nor does it fit within the settled law on pretrial orders. A trial within the meaning of section 583.310, according to our Supreme Court, " ' "is the determination of an issue of law or fact that brings the action to the stage where final disposition can be made." ' " (*Bruns, supra,* 51 Cal.4th at p. 723; accord, *Berri v. Superior Court* (1955) 43 Cal.2d 856, 859.) When applied to pretrial orders, this may include an order sustaining a

5

demurrer without leave to amend where a judgment of dismissal ordinarily would follow as a matter of course (e.g., *Berri*, at pp. 860–861), but it does not include an order sustaining a demurrer with leave to amend or a summary adjudication order because neither brings the action to final disposition. (*Ross v. George Pepperdine Foundation* (1959) 174 Cal.App.2d 135, 139, disapproved on other grounds by *Brunzel Constr. Co. v. Wagner* (1970) 2 Cal.3d 545, 555; *Lemaire, Faunce & Katznelson v. Cox* (1985) 171 Cal.App.3d 297, 301.) The demurrer at issue here was sustained as to the class claims without leave to amend but left the individual claims undisturbed. Likewise, the motion to strike concerned only the class claims; it left intact the individual claims. Neither order brought the action to a final disposition. Hodge does not concede the point but is, in fact, arguing for an extension of current law.

This is where Hodge invokes the death knell doctrine. The doctrine "provides that an order which allows a plaintiff to pursue individual claims but prevents the plaintiff from maintaining the claims as a class action, is treated as a final judgment." (*Aleman v. Airtouch Cellular, supra,* 209 Cal.App.4th at pp. 585–586.) Hodge submits that the courts should treat a death knell order as a final judgment for purposes of the five-year dismissal statute, just as courts do for purposes of appealability. The order should be deemed a trial, in other words, because it effectively brought " ' "the action to the stage where final disposition can be made." ' " (*Bruns, supra,* 51 Cal.4th at p. 723.)

We are not persuaded. First, the rationale for the death knell doctrine does not apply to the five-year dismissal statute. The death knell doctrine is a "tightly defined and narrow" exception to the one final judgment rule. (*Farwell v. Sunset Mesa Property Owners Assn., Inc.* (2008) 163 Cal.App.4th 1545, 1547.) When a pretrial order has disposed of the class claims, "in the absence of our treating the order as a de facto final judgment, any appeal would likely be foreclosed." (*In re Baycol Cases I & II, supra,* 51 Cal.4th at p. 757.) This is because an individual plaintiff may lack the economic incentive to pursue his individual claims to a final judgment. Without the death knell doctrine, this category of orders would be effectively immunized from appellate review. (*Id*. at p. 758.) In short, due to unique aspects of class actions, the death knell doctrine

was created to fix a problem (unreviewable dispositive orders) caused by application of the general rule (the one final judgment rule).

The five-year dismissal statute, by contrast, does not cause such problems. The statute simply sets a time limit for the prosecution of civil actions to prevent stale claims and endless delays. (*Munoz v. City of Tracy, supra,* 238 Cal.App.4th at p. 358–359.) Class actions present these same risks, and indeed courts have long applied the five-year statute to them. (E.g., *Massey v. Bank of America* (1976) 56 Cal.App.3d 29, 32–33 [dismissing class action where, after four years and 10 months, plaintiffs had not moved for class certification].) The statute also requires plaintiffs to diligently prosecute their lawsuits. (See § 583.130 ["[i]t is the policy of the state that a plaintiff shall proceed with reasonable diligence in the prosecution of an action . . ."].) Class action plaintiffs owe a duty of diligence just like other plaintiffs, and rightly so. (See *Warner Bros. Entertainment, Inc. v. Superior Court* (2018) 29 Cal.App.5th 243, 266–270 [issuing writ of mandate to dismiss class action where plaintiffs failed to demonstrate diligence]; *Massey*, at p. 32 [" '[p]rompt and early determination of the class is essential' "].)

Death knell appeals consume time, of course, but the time spent on appeal is not being counted against Hodge because Cingular agreed to extend the deadline. (See §§ 583.330 [allowing extensions by stipulation], 583.340 [excluding from the five-year calculation periods of time when the action was stayed], 916, subd. (a) ["the perfecting of an appeal stays proceedings in the trial court" at least in part].) Furthermore, interlocutory appeals and writ petitions are not unique to class actions. Hodge does not argue (and surely could not) that death knell orders make it impossible for class action plaintiffs to meet the five-year deadline. (See *Standard Oil Co. v. Superior Court* (1976) 61 Cal.App.3d 852, 857 [class certification and notice to class members are ordinary proceedings that require no exception from the five-year dismissal statute].) There is no problem here for the death knell doctrine to fix.

Second, a special rule for death knell orders would contradict the language and structure of the statute. Hodge is urging us to create an exception whereby class actions get a free pass on the dismissal statute whenever a trial court issues a death knell order,

regardless of whether the plaintiff has been diligent. The dismissal statute applies to all civil actions (§ 583.120, subd. (a)) except where the Legislature has created exceptions. (See, e.g., § 583.161 [exempting certain family code proceedings].) The Legislature created flexibility to prevent inequitable results—for example, the parties may stipulate to extend the time (§ 583.330), and the five-year deadline may be tolled for various reasons that make the deadline impossible or impracticable (§ 583.340). The critical factor in determining if the deadline is impracticable is " 'whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' " (*Bruns, supra,* 51 Cal.4th at p. 730.) It is not our role to amend the statute to add an exception for class actions when the Legislature has not seen fit to do so. (See *id*. at p. 727.)

Third, unsurprisingly, we see no practical or policy reason for an automatic extension for death knell orders. If Hodge believed that it was impossible, impractical, or futile to bring this 15-year-old action to trial in five years, or that the deadline should have been tolled beyond the 3,000 days it already had been, those arguments could have been made to the trial court. (§ 583.340; see *Standard Oil Co v. Superior Court, supra,* 61 Cal.App.3d at pp. 861–862 [rejecting plaintiffs' tolling argument and directing dismissal of class action].) They were not.

We decline Hodge's invitation to expand the definition of a trial beyond that established by longstanding authority from our high court. We agree with Cingular— neither of the two death knell orders was a trial under section 583.310.

## C.

We also reject Hodge's argument that our decisions reversing the two death knell orders, in *Tucker II* and *Rel,* triggered the three-year extension in section 583.320, subdivision (a)(3). The section provides: *"If a new trial is granted* in the action the action shall again be brought to trial within the following times: [¶] . . . [¶] (3) If on appeal an order granting a new trial is affirmed or *a judgment is reversed and the action remanded for a new trial*, within three years after the remittitur is filed by the clerk of the trial court." (§ 583.320, subd. (a)(3), italics added.)

8

"This provision . . . expressly applies only to a new trial of an action in which judgment has been entered and an appeal taken with reversal and remand for a new trial." (*No Oil, Inc. v. City of Los Angeles* (1984) 153 Cal.App.3d 998, 1003 [construing former § 583, subd. (c)].)[2] "[I]n the situation where there is an unqualified reversal without directions, the effect is to remand the case for a new trial on the merits." (*Ibid*.) Mirroring the definition of trial discussed previously, courts have determined section 583.320, subdivision (a)(3), applies "to two other situations, other than a new trial": when the trial court has sustained a demurrer *without* leave to amend or when a defendant has obtained a summary judgment or other judgment on the pleadings. (*Fannin Corp. v. Superior Court* (1974) 36 Cal.App.3d 745, 753; *id.* at pp. 753–755 [concluding discretionary dismissal for failure to prosecute was not a trial].)

We are not persuaded we should import the concept of de facto final judgments from the death knell doctrine into section 583.320, subdivision (a)(3), when the plain language does not in any way hint at such a legislative intent. From our conclusion regarding what is a trial for purposes of section 583.310, it follows there has been no "judgment," much less a "remand[] for a new trial." (§ 583.320, subd. (a)(3); see *McDonough Power Equipment Co. v. Superior Court* (1972) 8 Cal.3d 527, 532 ["where . . . a judgment of dismissal, entered upon an order sustaining a demurrer *without leave to amend,* has been reversed, the action must be brought to trial within three years from the filing of the remittitur" (italics added)]; *Burdusis v. Superior Court* (2005) 133 Cal.App.4th 88, 93 ["[o]rdinarily, a motion for a new trial is preceded by a trial"].)

Section 583.320, subdivision (a)(3), does not apply. We need not address the parties' remaining contentions.

## DISPOSITION

The order of dismissal is affirmed. Respondents are entitled to their costs on appeal.

---

[2] The relevant language of former section 583, subdivision (c) was replaced by section 583.320. (See Stats. 1984, ch. 1705, §§ 4–5, p. 6176.) The parties point to no relevant distinction between the former and current language.

                                                         _____

                                                         BURNS, J.

WE CONCUR:


_____

JONES, P. J.


_____

NEEDHAM, J.

A152225

Superior Court of San Mateo County, No. CIV 436164, V. Raymond Swope, Judge.

Franklin & Franklin, J. David Franklin; Law Offices of Anthony A. Ferrigno and Anthony A. Ferrigno for Plaintiffs and Appellants.

Drinker Biddle & Reath, Akin Gump Strauss Hauer and Feld, Michael J. Stortz and Matthew J. Adler for Defendants and Respondents.